UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
UNITED STATES OF AMERICA                :
:
 -v-                                    :         09 Cr. 722 (MGC)
:
PAUL GREENWOOD, and                     :
STEPHEN WALSH,                          :
:
                      Defendants.       :
------------------------------------------------------------x

## DECLARATION OF STEPHEN WALSH IN SUPPORT OF
## HIS MOTION FOR RELEASE OF FUNDS FOR ATTORNEY'S FEES AND COSTS

I, STEPHEN WALSH, do hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a defendant in the above-captioned action.

2. I am also a defendant in two civil actions currently before the Honorable George B. Daniels, United States District Judge for the Southern District of New York: *Commodity Futures Trading Commission v. Walsh, et al.*, 09 Civ. 1749 (GBD); and *Securities and Exchange Commission v. WG Trading Investors, L.P., et al.*, 09 Civ. 1750 (GBD) (the "CFTC and SEC actions").

3. I make this declaration, without waiver of my rights and privileges, including my Fifth Amendment privilege, in support of my Motion for Release of Funds for Attorney's Fees and Costs in the above-captioned action.

4. In 1983, my then-wife, Janet, and I decided to move from New York City to Long Island. We purchased a house and ten acres of land at 38 Arden Lane (formerly known as 145 Middle Neck Road), in Sands Point, NY, for approximately $900,000 in October 1983.

5. The house at 38 Arden Lane was built in the 1920's and had all of its original fixtures at the time we made the purchase. Upon closing, we began a three-year renovation project on the house. We extensively updated the house at a cost of approximately $2,000,000.

6. Janet and I sold our home and land at 38 Arden Lane in 1999 by splitting the property into separate parcels. We received approximately $4,500,000 on these transactions.

7. Of the approximately $4,500,000 we received for the sale of 38 Arden Lane, we used $3,150,000 to purchase our new home at 7 Half Moon Lane, also in Sands Point, in early 1999. We paid for this property outright, without a mortgage.

8. Janet and I separated in 2004 and later divorced. As part of the separation and divorce, full title and interest in 7 Half Moon Lane was transferred to me. I am currently the sole owner of the home at 7 Half Moon Lane.

9. 7 Half Moon Lane has appreciated in value since we purchased the home in 1999. In 2007, I considered selling 7 Half Moon Lane. I had numerous conversations with the predominant real estate broker for Sands Point and the North Shore of Long Island. A senior person in the brokerage office represented that 7 Half Moon Lane would sell for between $7,000,000 and $10,000,000 if I chose to sell.

10. On February 25, 2009, Judge Daniels entered orders in the CFTC and SEC actions that froze all of my assets (the "asset freeze orders") and placed them under the control of a Court-appointed Receiver (the "Receiver"). I have had no access to any of these assets since the entry of the asset freeze orders.

11. One of the assets currently restrained under the asset freeze orders is my home at 7 Half Moon Lane.

12. In addition to the home at 7 Half Moon Lane, the Court-appointed Receiver also currently has possession of other substantial assets of mine, many of which are liquid or could be liquidated within a short period of time. These liquid or near-liquid assets exceed $5,000,000.

13. My only sources of income at present are Social Security benefits and approximately $1,180 per month that I earn working as a telemarketer. I took the telemarketer position with the full knowledge and consent of the Receiver in order to reduce living expenses that needed to be paid out of the receivership estate. The funds from these sources are spent in accordance with the dictates of the Receiver.

14. I have spent a significant amount of time selecting defense counsel since the February 2009 filings of the criminal and civil complaints. After careful consideration and investigation, I chose Glenn C. Colton and Mark A. Flessner of Sonnenschein Nath & Rosenthal LLP ("Sonnenschein") to represent me in the criminal matter and Justin M. Sher of Sher L.L.P. to represent me in the civil matters.[1]

15. Because of the present restraints on my assets, I am unable to pay for the defense counsel of my choice in the above-captioned criminal matter. I was originally able to pay some funds (roughly $69,000) to Sonnenschein with money left over from money obtained from friends or family to allow me to retain Andrew Lawler. However, Sonnenschein has already performed substantial work in excess of the amount I paid, and I am unable to pay counsel for any of these services or for the substantial work that is to come. It is important to me that Sonnenschein, and Mr. Colton and Mr. Flessner in particular, remain my defense counsel in this action. However,

---

[1] I was represented previously in these actions by two other law firms: Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., and Andrew M. Lawler, P.C.

3

Sonnenschein has informed me that without payment, Sonnenschein will not be able to continue to represent me.

16. Accordingly, I am requesting the release of funds from my frozen assets to allow me to pay Sonnenschein for its work defending me in this criminal action.

Dated: December 21, 2009
New York, New York

_____
Stephen Walsh