UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
    -v-                                                     :   09 Cr. 722 (MGC)
                                                            :
PAUL GREENWOOD, and                                         :
STEPHEN WALSH,                                              :
                                                            :
                            Defendants.                     :
------------------------------------------------------------x

## DECLARATION OF GLENN C. COLTON IN SUPPORT OF DEFENDANT STEPHEN WALSH'S PRE-DISCOVERY MOTIONS

I, GLENN C. COLTON, do hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a partner in the law firm of Sonnenschein Nath & Rosenthal LLP ("Sonnenschein"), located at 1221 Avenue of the Americas, New York, New York, 10020, counsel for Defendant Stephen Walsh in the above-captioned action. I am duly admitted to practice in this Court. I submit this declaration and the attached exhibits in support of Mr. Walsh's Pre-Discovery Motions.

**Procedural Background**

2. On February 24, 2009, the United States Attorney's Office ("USAO") filed a criminal complaint against Stephen Walsh and his co-defendant, Paul Greenwood, in the above-captioned action. The next day, the Commodity Futures Trading Commission ("CFTC") and Securities & Exchange Commission ("SEC") filed civil actions against Messrs. Greenwood and Walsh, and various entities, captioned *Commodity Futures Trading Commission v. Walsh, et al.*, 09 Civ. 1749 (GBD), and *Securities & Exchange Commission v. WG Trading Investors, et al.*, 09 Civ. 1750 (GBD). These filings all allege essentially the same fraudulent conduct during the years 1996 to February 2009. Copies of the complaints in the instant criminal action, the CFTC

action, and the SEC action are attached to my Declaration in Support of Mr. Walsh's Motion for Release of Funds for Attorney's Fees and Costs, dated December 22, 2009 (the "Colton Fee Motion Dec."), ECF No. 59.

3. According to documents provided by the Government, representatives from the CFTC and SEC attended proffer sessions between Mr. Walsh, Assistant U.S. Attorney ("AUSA") John O'Donnell, and the Government's case agent, FBI Special Agent James C. Barnacle, Jr., on March 5, 2009 and May 6, 2009.

4. Upon motions by the CFTC and SEC, Judge Daniels issued a Statutory Restraining Order in the CFTC action (attached to the Colton Fee Motion Dec. as Exhibit D), and a Temporary Restraining Order in the SEC action (attached to the Colton Fee Motion Dec. as Exhibit E), on February 25, 2009, appointing Robb Evans & Associates LLC as the temporary Receiver (the "Receiver") over the civil defendants. These Orders empowered the Receiver, *inter alia*, to take control of Mr. Walsh's, and the other civil defendants', funds, property, assets, books, records, documents, and computers.

5. In Orders of Preliminary Injunction Against Defendants, entered May 22, 2009, Judge Daniels extended the terms of the February 25, 2009 restraining orders - including the Receivership - "until further order of the Court." Copies of these Orders in the CFTC and SEC actions are attached to the Colton Fee Motion Dec. as Exhibits F and G, respectively.

6. Messrs. Greenwood and Walsh were indicted in the above-captioned action on July 24, 2009. A copy of the Indictment is attached to the Colton Fee Motion Dec. as Exhibit H. Mr. Walsh pled not guilty to the Indictment on July 31, 2009.

**The Government's Representations Regarding Paper Discovery and the Receiver's Role in the Discovery Process**

7. At the October 19, 2009 status conference with the Court, the Government asserted that "there is a substantial amount of . . . material in the receiver's possession" -- at that

time, roughly "a couple of hundred boxes." (Oct. 19, 2009 Tr. at 14:25-15:21). The Government essentially argued that discovery was largely complete because defense counsel had been provided with allegedly detailed indexes of the documents and materials in the Receiver's possession. (*See id.* at 15:2-9).

8. In accordance with the Government's representations at the October 19, 2009 status conference, Mark Flessner, my colleague at Sonnenschein, spoke with the Receiver's office on November 5, 2009 to discuss reviewing and obtaining copies of the documents in the Receiver's possession. During that conversation, Mr. Flessner was informed that AUSA O'Donnell – not the SEC or CFTC attorneys working on the civil cases in which the Receiver was appointed – would need to authorize the Receiver to provide us with copies of documents.

9. At the December 1, 2009 status conference, the Government informed the Court that certain of the boxes in the possession of the Receiver would be sent back from the Receiver's office in California to New York. (Dec. 1, 2009 Tr. at 15:13-16:14.) The Government also informed that Court at that status conference that it had identified over 330 additional boxes of documents in New York. (*Id.* at 16:15-17:15.)

10. At the April 21, 2010 status conference, the Government indicated that the volume of paper materials had increased to approximately 600 boxes of documents, including documents located at 26 Federal Plaza, documents in the Receiver's possession in California, and in documents in Armonk, New York. (Apr. 21, 2010 Tr. at 12:7-12:23; 16:14-20:15.) The Government further indicated that it provided Defendants with an "index [to the boxes] way at the beginning of the case," (*Id.* at 23:15-16), but had not yet provided Defendants with copies of the documents in the boxes. (*See id.* at 13:15-14:24; 17:5-18:12; 21:6-23:6.) Also during the April 21, 2010 status conference, Mr. Flessner explained to the Court that Defendants had not yet

had the opportunity to review the boxes in either the Government's or the Receiver's possession. (*See id.* at 10:23-12:16.)

11. In a May 5, 2010 letter to the Court, the Government indicated that the total number of boxes had increased to approximately 650 -- 80 in the Government's possession at 26 Federal Plaza, 262 boxes at the Receiver's office in California, and 314 boxes located at a storage facility in Armonk, New York.[1] The Government asserted, both to the Court and in a letter to defense counsel on May 5, 2010, that based on its "preliminary review" of the 262 boxes of documents in the Receiver's possession in California, these boxes contain files from Westridge Capital Management and "are not relevant to the case." Nevertheless, an index of these boxes provided to defense counsel on May 5, 2010 indicates that 152 of these 262 boxes have never been inventoried. True and correct copies of the Government's May 5, 2010 letters to the Court and to defense counsel are attached hereto as Exhibits 1 and 2, respectively.

12. In addition to identifying the 650 boxes of documents located in California and New York, the Government has provided Defendants with approximately 29,650 pages of discovery over the course of several months. A letter to counsel accompanying the Government's latest production, on June 11, 2010, indicates that the Receiver located certain of the documents in the production from the boxes ostensibly in its possession and provided copies of the documents to the Government, and the Government subsequently provided the documents to counsel. A true and correct copy of this June 11, 2010 letter is attached hereto as Exhibit 3.

13. To the best of my knowledge, these most current figures regarding the volume of discovery in this action largely include materials currently in the possession of the Government and/or the Receiver that were obtained from the civil defendants. These figures do not seem to

---

[1] As set forth more fully in the accompanying Declaration of Kimberly Kalmanson, my colleague at Sonnenschein (the "Kalmanson Dec."), there are also documents in storage at an additional storage warehouse facility in the Bronx, New York. (Kalmanson Dec., ¶ 5).

- 4 -

include all the materials obtained from any third parties, or in the possession of any other Governmental entities involved in the instant investigation and prosecution.

**The Government's Representations Regarding Electronic Discovery and the Receiver's Role in the Discovery Process**

14. Also at the December 1, 2009 status conference, the Government indicated that the Receiver is in possession of 18 computer hard drives. (Dec. 1, 2009 Tr. at 17:16-17:20.) As set forth more fully in the Kalmanson Declaration, the Government has produced to date only selected files from 12 of the 18 hard drives. (*See* Kalmanson Dec., ¶ 9).

15. A letter to counsel accompanying the Government's electronic discovery production on May 21, 2010 included an inventory the Government states was prepared by the Receiver summarizing the contents of hard drives in its possession; the letter further asserts that the Receiver copied certain files from these hard drives onto the data disks the Government subsequently produced to defense counsel. A true and correct copy of this May 21, 2010 letter is attached hereto as Exhibit 4.

16. In addition to the 18 hard drives the Government indicated were in the Receiver's possession, the Receiver apparently also has in its possession 21 computers purportedly used by WG Trading Company "for its securities trading." (*See* Ex. 1, at 2). Although the Government has obtained a cost estimate for providing Defendants with the contents of these computers, Defendants have not yet received this material.

Dated: June 25, 2010
New York, New York

_____
Glenn C. Colton