UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,           :
                                     09 Cr. 722 (MGC)
                                    :
   - v -
                                    :
PAUL GREENWOOD,
STEPHEN WALSH,                      :

                  Defendants.       :
------------------------------------X

### DECLARATION OF BRICK KANE

I, BRICK KANE, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

   1.   I am the Chief Operating Officer of Robb Evans & Associates LLC ("Robb Evans"), which was appointed by the Court in CFTC v. Walsh, et al., 09 Civ. 1749 (GBD) ("CFTC Action"); and SEC v. WG Trading Company LP, et al., 09 Civ. 1750 (GBD)("SEC Action"), to act as receiver over the defendants and relief defendants in the CFTC and SEC actions (the "Receiver").

   2.   Pursuant to the Court's Orders, Robb Evans serves as the Receiver over WG Trading Company Limited Partnership ("WG Trading"), WG Trading Investors, L.P. ("WG Investors"), Westridge Capital Management, Inc. ("Westridge"), and business entities owned by or affiliated with them (collectively, the "Receivership Entities"), and also serves as receiver over the assets of individual defendants Paul Greenwood ("Greenwood") and Stephen Walsh ("Walsh"). This declaration is based upon my personal knowledge, and my review of books and records in the possession of the Receiver.

## The Receiver's Appointment And Authority

3. Robb Evans was appointed as Temporary Receiver over the Receivership Entities and Walsh and Greenwood pursuant to orders issued by the Honorable George B. Daniels in the CFTC and SEC actions on February 25, 2009. (A copy of the February 25, 2009 Order in the CFTC Action is attached as Exhibit A and a copy of the February 25, 2009 Order in the SEC Action is attached as Exhibit B). On or about May 21, 2009, Judge Daniels issued orders in the CFTC and SEC actions that, among other things, continued Robb Evans's appointment as Receiver over the Receivership Entities and the assets of Greenwood and Walsh. (A copy of the May 21, 2009 Order in the CFTC Action is attached as Exhibit C and a copy of the May 21, 2009 Order in the SEC Action is attached as Exhibit D).

4. Pursuant to Judge Daniels's February 25, 2009 Orders, Robb Evans was appointed "Temporary Receiver for the Defendants's and the Relief Defendants' Assets and the assets of any affiliates or subsidiaries of any Defendant or Relief Defendant, with the full powers of an equity receiver." (Exhibit A, ¶ 22; see Exhibit B, ¶ XVIII). The Receiver was designated as an "officer of the Court" and was directed and authorized to accomplish the following: (a) "[a]ssume full control of the Corporate Defendants and Relief Defendants and any business entities owned by any Defendant or relief Defendant, including but not limited to Stephen Walsh, Paul Greenwood, Westridge Capital Management, Inc., WG Trading Investors LP, WGIA LLC, Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K & L Investments, and Janet Walsh" and remove any officer or employee; and (b) "[t]ake exclusive custody, control, and possession of all funds, property, mail and other assets of or in the possession of, or under the control of the Defendants or Relief Defendants, wherever situated, including but not limited to assets held by Stephen Walsh, Paul Greenwood, Westridge Capital

Management, Inc., WG Trading Investors LP, WGIA LLC, Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K & L Investments, and Janet Walsh." (Exhibit A, ¶ 23(a)-(b); see Exhibit B, ¶¶ XVIII(a)-(c)). The Receiver was specifically granted "full power to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Defendants and Relief Defendants, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Defendants or Relief Defendants." (Exhibit A, ¶ 23(b)).

    5. In addition, the Receiver was directed and authorized to do the following: (a) take all steps necessary to secure the business and residential premises of the defendants and relief defendants; (b) preserve, hold, and manage all receivership assets; (c) prevent the withdrawal or misapplication of funds entrusted to the Defendants, or Relief Defendants, and otherwise protect the interests of customers, clients, pool participants, or investors; (d) manage and administer the assets of the Defendants and the Relief Defendants by performing all acts incidental thereto that the Receiver deems appropriate; (e) collect all money owed to the Defendants and Relief Defendants; (f) initiate, defend or dispose of any lawsuit necessary to preserve or increase the assets of the Defendants or Relief Defendants or to carry out his or her duties pursuant to this Order; (g) retain attorneys, accountants, or other contractors or specialists, as necessary; (h) issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in the actions on behalf of the Receivership estate; and (i) make payments from the receivership estate as necessary to carry out its mandate, upon the approval of the Court. (See Exhibit A, ¶¶ 23(c)-(l); Exhibit B, ¶¶ XVIII(d)-(i)). These powers were continued in the Court's May 21, 2009

Orders.

6. Pursuant to Judge Daniels's Orders, the defendants, including Greenwood and Walsh, were directed to turn over possession and custody of: (a) funds, property, and other assets; (b) possession and custody of "any documents of the Defendants or Relief Defendants, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, cancelled checks, records of wire transfers, and check registers), client lists, title documents, and other papers": (c) possession and custody of precious metals and commodities; (d) "all keys, computer passwords, entry codes, and combinations to locks necessary to gain or secure access to any of the assets or documents of the Defendants or Relief Defendants, including but not limited to, access to the Defendants and Relief Defendants residential and business premises means of communication, accounts, computer systems, or other properties": and (e) information identifying accounts, employees, properties or other assets of obligations of the Defendants or Relief Defendants. (See Ex A, ¶ 24.) The defendants and relief defendants were further ordered to cooperate with and assist the Receiver. (Exhibit A, ¶ 25).

### The Receiver's Possession Of Books And Records Of The Receivership Entities and The Defendants

7. On or about February 27, 2009, personnel from the Receiver took control of the business premises of WG Trading Company, and its affiliates, at the following locations: (a) One Lafayette Place, Second Floor, Greenwich, CT ("Greenwich Office"); (b) 3333 New Hyde Park Road, Suite 411, North Hills, NY ("Long Island Office"); and (c) 111 Town Square Place, Suite 1405, Jersey City, NJ ("Jersey City Office"). On or about February 27, 2009, the Receiver took control of the offices of Westridge Capital Management at 222 East Carrillo Street, Suite 300, Santa Barbara, CA ("California Office"). The Receiver had the locks at those locations changed

and posted security personnel at the offices.

        8.     After taking possession of the Greenwich Office, the Long Island Office, and the Jersey City Office, the Receiver's personnel reviewed the books and records that were in those offices and identified books and records created prior to the commencement of the Receivership that the Receiver believed might be useful to its performance of its duties under the Court's Orders. The Receiver also obtained pre-Receivership documents that had been produced to SEC examiners who had conducted an examination of WG Trading Company shortly before the initiation of the CFTC and SEC actions. Beginning on or about March 11, 2009, the Receiver created various indexes of certain of the pre-receivership documents of the Receivership Entities. Redacted copies of the following indexes are attached as follows: (1) an index of certain materials from the Greenwich Office (Exhibit E); (2) an index of materials that the SEC examination staff had taken from the Long Island Office (Exhibit F); and (3) an index of materials that the SEC examination staff had taken from the from the Jersey City and Greenwich Offices (Exhibit G).[1] On or about April 3, 2009, copies of these inventory lists were sent via e-mail to counsel for Greenwood. Walsh's then counsel did not request copies of the inventory lists.

        9.     Some of the pre-receivership documents were transported to the Receiver's Offices in Sun Valley, CA, for further review and analysis by the Receiver's personnel. The documents from the Greenwich Office (Exhibit E) were sent to the Receiver's Office on or about March 2, 2009. At the Receiver's request, the documents identified in Exhibits F and G were sent by the SEC examination staff to the Receiver's Office on or about March 2, 2009.

        10.    The Receiver also learned that there were approximately 185 boxes of materials that had been shipped to a storage company (the "Storage Company") in the New York

---

[1] Information such as account numbers for bank and brokerage accounts and investor names have been redacted.

area by WG Trading employees in the ordinary course of business prior to the commencement of the Receivership. Personnel at WG Trading had created and maintained an index of these materials prior to the appointment of the Receiver. (A copy of the index maintained by WG Trading personnel of those materials is attached as Exhibit H.)

11. Beginning on or about June 22, 2009, the Receiver began to terminate the leases and close the various WG Trading offices. The Receiver closed the Greenwich Office on July 2, 2009, the Long Island Office on July 7, 2009, and the Jersey City Office on July 1, 2009. As it did so, the materials from those offices that were not previously sent to California were sent to the Storage Company, but were not indexed. As of this declaration, the Receiver has sent the following boxes to the Storage Company:

- approximately 50 boxes from the Greenwich Office;
- approximately 42 boxes from the Jersey City Office;
- approximately 59 boxes from the Long Island Office.

It is my understanding that these documents are being maintained by the Storage Company at locations in Westchester, New York, and the Bronx, New York.

12. With respect to the Westridge Office in Santa Barbara, CA, the Receiver has closed the office and taken possession of approximately 262 boxes of documents. These documents are maintained at the Receiver's Office in Sun Valley, CA, but only 110 of those boxes have been inventoried by the Receiver's personnel. (A redacted copy of the index to those boxes is attached as Exhibit I).

13. The Receiver also has taken possession of various computers and other electronic media of the Receivership Entities.

14. In addition, the Receiver has possession of 20 hard drives for computers

that were located at the Jersey City Office and used by WG Trading Company in its securities trading activities. The Receiver has obtained an estimate for imaging those hard drives, a copy of which is attached as Exhibit J. The defendants are welcome to have these hard drives imaged, at their own expense.

### The Receiver's Cooperation With Interested Parties

15. Since its appointment, the Receiver has cooperated with the U.S. Attorney's Office ("USAO"), the Federal Bureau of Investigation ("FBI"), the CFTC, the SEC, defendants Greenwood and Walsh, and investors, by providing access to and/or copies of pre-receivership books and records in its possession, custody, and control to these parties. In doing so, the Receiver has made a business decision on behalf of the Receivership Entities that it is in the best interests of the Receivership Entities and the investors that the Receiver cooperate with and provide materials to the parties in the pending criminal case.

**A. Walsh's And Greenwood's Access To Materials In The Possession Of The Receiver**

16. On or about March 6, 2009, representatives of the Receiver met with counsel for Greenwood and counsel for Walsh. At the meeting, Greenwood's counsel identified several categories of personal items that he requested be copied for Greenwood, which included materials related to Greenwood's personal tax returns, purchases of antiques and books, bank records, and materials related to a farm that Greenwood owned with his wife. On or about March 17, 2009, the Receiver sent six boxes containing approximately 24,076 pages of material to Greenwood's counsel, together with an invoice for the costs of the copying. Walsh's counsel did not request any documents at this meeting.

17. On or about March 23, 2009, I and another representative of the Receiver conducted an inspection of Greenwood's residence. Greenwood and his counsel were present at

the inspection. At that time, the Receiver did not take any documents from the residence. Later that same day, I and another representative of the Receiver met with Greenwood at the Greenwich Office, which was where Greenwood had maintained his personal office. During that meeting, Greenwood reviewed various documents and other items and was able to retain materials that we agreed were personal.

18. On or about April 6, 2009, Greenwood again went to the Greenwich Office and met with a representative of the Receiver. During that meeting, Greenwood reviewed various documents and other items and was able to copy certain documents and remove materials that the Receiver's personnel agreed were personal.

19. On April 1, 2009, Greenwood's counsel requested specific documents from the Receiver and the Receiver provided most of those documents on April 2, 2009. On April 3, 2009, Greenwood's counsel requested that the Receiver provide an inventory of documents. The Receiver provided the inventory lists to Greenwood's counsel that same day. At various times since April 3, 2009, Greenwood's counsel has requested specific documents from the Receiver by reference to the inventory of documents attached to this Declaration as Exhibits E through G. Greenwood's counsel made such requests on the following dates: April 6, 2009, April 10, 2009, May 26, 2009, May 28, 2009, and April 14, 2010. In response to those requests, the Receiver's personnel caused copies to be made of the documents and provided them to Greenwood's counsel. In addition, from time to time, the Receiver has provided copies of documents to counsel for Greenwood's wife, Robin Greenwood, who is a relief defendant in the SEC and CFTC actions.

20. On or about March 4, 2009, Carol Martinez, a WG Trading employee who had functioned as Walsh's personal assistant, met with the Receiver's personnel at the Long Island Office, which was where Walsh had maintained his personal office. At that meeting, Ms.

Martinez reviewed and copied some of Walsh's personal files.

21. On or about March 24, 2009, I and another representative of the Receiver conducted an inspection of Walsh's residence. Walsh was invited, but was not present for the inspection. At that time, the Receiver did not take any documents from the residence. While we were at Walsh's residence, we arranged for Walsh to meet us at the Long Island Office later that afternoon because Walsh had requested access to his books and records. Walsh did not appear for that scheduled meeting.

22. On or about June 17, 2009, Walsh met with a representative of the Receiver at the Long Island Office. During that meeting, Walsh had the opportunity to review documents and materials located at the office. With the Receiver's permission, Walsh removed photographs and items of memorabilia from the office.

23. In or about November 2009, counsel for the Receiver and I spoke to Walsh's defense counsel. During that conversation, counsel for Walsh requested general access to the documents and materials in the Receiver's possession. At that time, I indicated that Walsh's counsel was welcome to come to our office and review documents, but that counsel should consult with the USAO concerning the request that Walsh be allowed to copy documents. In addition, Walsh's counsel requested that the Receiver provide him with copies of the documents that the Receiver had previously provided to Greenwood's counsel. Because we considered some of the documents that we had copied for Greenwood to be personal, we advised Walsh's counsel that he should consult with the USAO concerning the request. (A copy of an e-mail from Walsh's counsel summarizing our conversation is attached as Exhibit K). After this e-mail, the Receiver has had no further requests from Walsh or his counsel requesting access to documents in the Receiver's possession. With respect to the materials that had been provided to Greenwood's

counsel, the Receiver provided the USAO with a copy of the materials that had previously been provided to Greenwood's counsel. I understand that, after consulting with Greenwood's counsel, the USAO provided these materials to Walsh's counsel.

### B. The Receiver's Cooperation With The Criminal Authorities

24. The Receiver has cooperated with the criminal authorities in their investigation and prosecution of this matter. Among other things, the Receiver has provided the USAO and the FBI access to the materials in the Receiver's possession, has produced copies of documents, computer media, and other materials in its possession to the USAO and the FBI, and has executed forms consenting to the Government searching various computer media. In or about early March 2009, with the Receiver's permission, an Assistant U.S. Attorney ("AUSA"), an FBI special agent, and a CFTC attorney, visited the Long Island Office. In or about May 2009, representatives of the USAO, the FBI, the CFTC, and the SEC, met with employees of the Receiver at the Receiver's offices in Sun Valley, CA. During that time, the representatives of these agencies were allowed by the Receiver's representatives to review and copy documents in the Receiver's possession.

25. In or about November 2009, I learned from the USAO that counsel for Walsh objected to the Receiver's transportation of records to its California offices prior to a hearing in the criminal case. Based on that objection, the USAO asked if the Receiver would consider shipping the boxes to the USAO in New York so that the documents could be available to the defendants in New York City. On or about January 27, 2010, the Receiver shipped approximately 80 boxes of materials to the USAO in New York, which consist generally of the materials identified in the indexes attached as Exhibits E, F, and G. Prior to doing so, the Receiver caused the documents to be scanned into electronic format because access to those

materials is still necessary for the Receiver to perform its duties under the terms of Judge Daniels's orders.

26. In or about late May 2010, I learned that Walsh's counsel intended to review records relating to WG Trading and the Receivership entities, both at the USAO and at the Storage Company's locations in Westchester and the Bronx. In or about late June 2010, the USAO sent me a copy of a letter from Walsh's counsel to the USAO identifying boxes of documents that Walsh's counsel requested be copied. I subsequently advised the USAO that the Receiver had made electronic copies of most of the documents that Walsh's counsel requested and sent CD-Roms containing the copies to the USAO.

27. Neither Walsh nor his counsel has ever come to the Receiver's Office in California to review documents. I have received a bill from the Storage Company for $353.12 for the Storage Company's work in making documents available to Walsh and/or his counsel on or about June 2, 2010.

C. **The Receiver's Cooperation With The CFTC And The SEC**

28. Pursuant to Judge Daniels's Orders, the Receiver is obligated to provide the CFTC with access to the books and records of the Receivership entities that are in its possession. (Exhibit A, ¶ 33). Accordingly, the Receiver has cooperated with the CFTC and the SEC, and has provided access to the books and records that are in its possession to those agencies.

D. **The Receiver's Cooperation With Investors**

29. The Receiver has also cooperated with investors in their efforts to investigate the fraud and recover their lost assets. The Receiver's personnel have met with investors' representatives, including forensic accountants, and have provided information to investors concerning the transactions of WG Trading and WG Investors, and related entities.

These materials have been provided pursuant to the terms of a protective order entered by Judge Daniels.

## The Receiver's Reports

30. On May 27, 2009, the Receiver filed its initial Report of Activities with the Court in the CFTC Action and the SEC Actions. (A copy of the May 27, 2010 Report (without the voluminous exhibits) is attached as Exhibit L).

31. On June 3, 2010, The Receiver filed its second Report of Activities with the Court in the CFTC Action and the SEC Action (A copy of the June 3, 2010 Report (without the voluminous exhibits is attached as Exhibit M).

Dated: July 22, 2010
      Sun Valley, CA

                                                            Brick Kane