UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                                 :

UNITED STATES OF AMERICA       :

    -v-                                      :          09 Cr. 722 (MGC)

PAUL GREENWOOD, and          :
STEPHEN WALSH,

                Defendants.     :
-------------------------------------------------------X

## SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT STEPHEN WALSH'S PRE-DISCOVERY MOTIONS

SONNENSCHEIN NATH & ROSENTHAL LLP

Glenn C. Colton (GC-2493)
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: 212-398-5797
gcolton@sonnenschein.com

Mark A. Flessner (*admitted pro hac vice*)
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: 312-876-3136
mflessner@sonnenschein.com

*Attorneys for Defendant Stephen Walsh*

**TABLE OF CONTENTS**

                                                                                                                                         **Page**

I.     AT A MINIMUM, THE COURT SHOULD HOLD A HEARING DURING WHICH THE GOVERNMENT SHOULD SPECIFY THE PLANNING AND COORDINATION WITH CIVIL ENFORCEMENT AUTHORITIES THAT RESULTED IN A GENERAL SEARCH OF STEPHEN WALSH'S PERSONAL AND PROFESSIONAL DOCUMENTS AND MATERIALS ........................................... 1

II.    STEPHEN WALSH IS ENTITLED TO RULE 16, EXCULPATORY, AND IMPEACHMENT MATERIAL FROM ALL GOVERNMENTAL ENTITIES INVOLVED IN THIS INVESTIGATION ........................................................................ 3

III.   STEPHEN WALSH IS ENTITLED TO A BILL OF PARTICULARS ............................ 7

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*City of Ontario, Cal. v. Quon*,
 130 S. Ct. 2619 (2010)..................................................................................................2

*Ferreira v. United States*,
 350 F. Supp. 2d 550 (S.D.N.Y. 2004)........................................................................5, 6

*Kyles v. Whitley*,
 514 U.S. 419, 115 S. Ct. 1555 (1995)..............................................................................6

*O'Connor v. Ortega*,
 480 U.S. 709, 107 S.Ct. 1492 (1987)..............................................................................2

*SEC v. Stanard*,
 06 Civ. 7736, 2007 WL 1834709 (S.D.N.Y. June 26, 2007).........................................5

*United States v. Avellino*,
 136 F.3d 249 (2d Cir. 1998).............................................................................................5

*United States v. Davidoff*,
 845 F.2d 1151 (2d Cir. 1988).......................................................................................8, 9

*United States v. Finnerty*,
 411 F. Supp. 2d 428 (S.D.N.Y. 2006).............................................................................5

*United States v. Guerrerio*,
 670 F. Supp. 1215 (S.D.N.Y. 1987)............................................................................5, 6

*United States v. Locascio*,
 6 F.3d 924 (2d Cir. 1993) ............................................................................................4, 5

*United States v. Mahaffy*,
 No. 05-CR-613, 2010 WL 2925952 (E.D.N.Y. July 21, 2010)......................................4

*United States v. Mandell*,
 09-Cr. 662, 2010 WL 1780961 (S.D.N.Y. Apr. 30, 2010) .......................................9, 10

*United States v. Nachamie*,
 91 F. Supp. 2d 565 (S.D.N.Y. 2000)...............................................................................9

*United States v. Quinn*,
 445 F.2d 940 (2d Cir. 1971)..........................................................................................4, 5

*United States v. Rigas*,
   02 Cr. 1236, 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008),
   *aff'd*, 583 F.3d 108 (2d Cir. 2009) ................................................................................6

*United States v. Upton*,
   856 F. Supp. 727 (E.D.N.Y. 1994) ..............................................................................5, 6

## RULES, STATUTES and OTHER AUTHORITIES

USAM Criminal Resource Manual 165, Memorandum for Department
   Prosecutors from Deputy Attorney General David W. Ogden (Jan. 4, 2010),
   *available at* http://www.justice.gov/dag/discovery-guidance.html .......................3, 4, 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                                :

UNITED STATES OF AMERICA                   :

    -v-                                                 :         09 Cr. 722 (MGC)

PAUL GREENWOOD, and                      :
STEPHEN WALSH,                              :

                    Defendants.            :
------------------------------------------------------------x

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT STEPHEN WALSH'S PRE-DISCOVERY MOTIONS**

Defendant Stephen Walsh respectfully submits this Reply Memorandum of Law in Further Support of his Pre-Discovery Motions to reply to those portions of the motion to which he has not yet replied and to respond to questions posed by the Court during the July 30, 2010 hearing.

**I. AT A MINIMUM, THE COURT SHOULD HOLD A HEARING DURING WHICH THE GOVERNMENT SHOULD SPECIFY THE PLANNING AND COORDINATION WITH CIVIL ENFORCEMENT AUTHORITIES THAT RESULTED IN A GENERAL SEARCH OF STEPHEN WALSH'S PERSONAL AND PROFESSIONAL DOCUMENTS AND MATERIALS**

At the July 30, 2010 oral argument on Mr. Walsh's motion for the return of personal and privileged documents and materials, counsel for the Government suggested, if not outright admitted, that the criminal authorities coordinated their tactics with the SEC and CFTC, and purposely waited for the appointment of a civil receiver they knew was coming so they did not have to attempt to obtain a search warrant or give Mr. Walsh the advance notice inherent in service of a subpoena. (*See* July 30, 2010 Hearing Transcript ("Hrg. Tr."), at 39-40). Given the statements made by the prosecutors at the July 30, 2010 hearing, there is even more reason to believe that the prosecutors and the FBI used their colleagues at the SEC and CFTC to enable them to proceed with an illegal general search.

- 1 -

The Government suggests that its actions and decisions with respect to Mr. Walsh represent nothing more than how the Government "generally" proceeds in coordinated civil and criminal enforcement actions. *See id.* However, simply dismissing a practice as the "ordinary course" does not immunize it from judicial scrutiny or render it constitutionally sufficient. In essence, what the Government contends is that when there are coordinated criminal and civil actions, the Government has the power, by virtue of its own *ipse dixit,* to reduce a criminal defendant's rights to the lower level applied to civil litigants. This Court has already rejected a similar attempt to measure Mr. Walsh's Sixth Amendment right to counsel on a civil scale. Mr. Walsh respectfully submits that the same result is warranted as to his Fourth Amendment rights.[1]

It is undisputed that the USAO, CFTC, SEC, and FBI have been coordinating on this investigation and prosecution from the beginning, including for example, conducting joint interviews. (*See* Declaration of Glenn C. Colton, dated June 25, 2010, ¶¶ 2, 3) (detailing admitted civil and criminal coordination). Given that a general search was conducted, Mr. Walsh urges the Court to hold a hearing to determine exactly how the criminal authorities coordinated with the civil authorities in a manner that resulted in the criminal authorities making

---

[1] Mr. Walsh is cognizant of the fact that, as the Court noted, the Fourth Amendment protects all citizens and does not operate solely to protect criminal defendants. However, recent Supreme Court case law demonstrates that the purpose of the Government's actions does bear on the determination of reasonableness under the Fourth Amendment. *See City of Ontario, Cal. v. Quon*, 130 S.Ct. 2619, 2630 (2010) (discussing a government employer's warrantless search and finding the search reasonable when conducted for a "noninvestigatory, work-related purpose or for the investigation of work-related misconduct") (*quoting O'Connor v. Ortega*, 480 U.S. 709, 725-26, 107 S.Ct. 1492 (1987) (internal alterations and quotations omitted). Here, the Government's purpose in obtaining access to all of Mr. Walsh's documents and materials was to further its criminal investigation into alleged conduct for which Mr. Walsh faces the daunting possibility of life in prison. Surely these circumstances warrant holding the Government to the highest Constitutional standards.

such a limitless seizure. It is only with a full record that the Court can properly and fairly assess the Constitutional improprieties that have occurred and the remedies that should be applied.[2]

## II. STEPHEN WALSH IS ENTITLED TO RULE 16, EXCULPATORY, AND IMPEACHMENT MATERIAL FROM ALL GOVERNMENTAL ENTITIES INVOLVED IN THIS INVESTIGATION

The Government opposes Mr. Walsh's request for discovery materials from all governmental entities involved in this investigation and prosecution. The Government's arguments ignore the facts of this case, the Department of Justice's own advice to prosecutors regarding the appropriate scope of discovery in coordinated civil and criminal actions, and this Court's clearly stated views. *See* Hrg. Tr. At 25:24-25 (referencing the requirement to produce *Brady* material, the Court noted its "strongly held view that this is one government").

Deputy Attorney General David W. Ogden's recent memorandum, "Guidance for Prosecutors Regarding Criminal Discovery,"[3] (the "Ogden Memo") addressed USAO's criminal discovery obligations in the wake of the dismissal of the charges against the late Senator Ted Stevens due to the Government's failure to meet discovery obligations. The Ogden Memo advocates a broad and inclusive approach to criminal discovery and, *inter alia*, specifically counsels prosecutors to "err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes." Ogden Memo at § A (addressing issues with

---

[2] At the July 30 hearing, the Court also asked for further information regarding the tasks Mr. Walsh's secretary did for him and why he would not be able to specify what personal and privileged documents the Government seized. As noted in the contemporaneously submitted supplemental declaration, Mr. Walsh's secretary, Carol Martinez, also functioned as his personal assistant. Mr. Walsh relied on Ms. Martinez to store and file both his personal and work-related documents. Specifically, Mr. Walsh does not know whether she segregated and/or labeled his personal files from his work-related materials. Thus, it is impossible for Mr. Walsh to know exactly what personal and/or privileged materials the prosecution team seized. (*See* Supplemental Declaration of Stephen Walsh, dated September 13, 2010 ("Walsh Supp. Dec."), ¶ 4).

[3] USAM Criminal Resource Manual 165, Memorandum for Department Prosecutors from Deputy Attorney General David W. Ogden (Jan. 4, 2010), *available at* http://www.justice.gov/dag/discovery-guidance.html (last visited Sept. 13, 2010).

identifying the prosecution team in "complex cases that involve parallel proceedings with regulatory agencies"). The Ogden Memo makes clear that prosecutors should seek to advance the Department's "pursuit of justice" and "truth-seeking mission" − even if advancing these concerns would lead to the production of "broader and more comprehensive" discovery than traditional discovery practices dictate. *Id.* at §§ Intro, Step 3; *see also United States v. Mahaffy*, No. 05-CR-613, 2010 WL 2925952, at *6 (E.D.N.Y. July 21, 2010) (discussing prosecutors' criminal discovery obligations and stating, "Even if the prosecutors are not sufficiently motivated, as they should be, by the defendants' interest in a fair trial, one would think the government's selfish interest in the integrity and durability of the convictions it obtains would induce it to . . . err on the side of over-disclosure unless well-grounded concerns about particular witnesses or other investigations counsel otherwise"); *United States v. Vilar,* No. 05 Cr. 621 (RJS), Transcript of Trial, November 3, 2008, at 4189:22 - 4194:5, Supplemental Declaration of Glenn C. Colton in Further Support of Defendant Stephen Walsh's Pre-Discovery Motions, dated September 13, 2010), ¶ 4 & Ex. 4 (colloquy resulting in Judge Sullivan rejecting a "separate government" argument and ultimately ordering production of 3500 material in the possession of the SEC).

In the face of guidance from the Ogden Memo and this Court, none of the Government's case citations are availing. The Government does not cite a single case that post-dates the Ogden Memo or otherwise embodies the Ogden Memo's principles regarding a broad and inclusive conception of a prosecution team. Indeed, all of the cases cited by the Government are distinguishable on their facts. In the 17-year-old *United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) decision, and the 39-year-old *United States v. Quinn*, 445 F.2d 940 (2d Cir. 1971) decision, for example, the Second Circuit found that the prosecutors had no obligation to produce evidence or other materials from other state and federal governmental entities or agents to

defendants where those other entities were **not involved** in the investigation or trial. *Locascio*, 6 F.3d at 948-49 (concerning FBI reports prepared by agents working on other cases who were not involved in investigation at issue); *Quinn*, 445 F.2d at 944 (finding that New York AUSA had no knowledge of the actions of a Florida prosecutor and the return of a sealed indictment in Florida that was not unsealed until after trial had concluded in New York).[4] In sharp contrast to *Locascio* and *Quinn*, the FBI, CFTC, and SEC have participated in the instant investigation from the outset, and the USAO has been fully aware of these agencies' actions and involvement. (*See, e.g.,* Declaration of Glenn C. Colton in Support of Defendant Stephen Walsh's Pre-Discovery Motions, dated June 25, 2010 ("Colton Dec."), ¶¶ 2, 3).

The Government also cites several district court cases finding that the USAO and various other entities were not involved in joint investigations. (Opp. Br. 32-33 (*citing SEC v. Stanard*, 06 Civ. 7736, 2007 WL 1834709 (S.D.N.Y. June 26, 2007); *United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006); *Ferreira v. United States*, 350 F. Supp. 2d 550 (S.D.N.Y. 2004); *United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994); *United States v. Guerrerio*, 670 F. Supp. 1215 (S.D.N.Y. 1987)).[5] Whether entities are involved in a joint investigation and prosecution in a particular case is necessarily a fact-specific inquiry, and the mere fact that the USAO was not acting jointly with the other agencies in *other* cases does not preclude a finding

---

[4] The Government also cites *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998), for the proposition that knowledge of other entities' materials cannot be imputed to the prosecutor in **all** instances. *See id.* at 255. The *Avellino* Court, however, did not reach the question of whether the prosecutor had actual or constructive knowledge of evidence gathered in a prior state investigation. *See id.* at 256.

[5] The Government singles out *Stanard* and *Finnerty* as "instructive;" however, these two cases are completely inapposite. *Stanard* concerned a request to the SEC to produce FBI files **in connection with a civil enforcement action**, and thus does not raise the same criminal discovery issues as are present here. *See* 2007 WL 1834709, at *3. Furthermore in *Finnerty*, the Court expressed doubt at the proposition that the NYSE could be considered a "government agency" for Rule 16 purposes, but found in any event that the NYSE had undertaken its investigation in accord with "its own practices," and there was no "suggestion that the Government participated in that investigation." 411 F. Supp. 2d at 433.

that the USAO, CFTC, and SEC have conducted a joint investigation and prosecution of Mr. Walsh. Unlike the collaboration between the USAO, CFTC, and SEC in the course of the instant investigation, the connections between the Governmental entities in the cases cited by the Government are attenuated at best. *See Ferreira*, 350 F. Supp. 2d at 556-57 (finding that USAO and NYPD could not be considered part of the same prosecution team where the two entities conducted "wholly separate" investigations into defendant's conduct); *Upton*, 856 F. Supp. at 750 (noting that the defendant did not challenge the Government's representation that the FAA merely provided two investigators for the investigation and was otherwise uninvolved in the matter); *Guerrerio*, 670 F. Supp. at 1218-19 (finding no joint investigation where state and federal prosecutors initially conducted separate investigations but then reached an agreement that the USAO would continue with the prosecution for efficiency reasons, upon which time the state investigation ceased).

Finally, although the Government cites *United States v. Rigas*, 02 Cr. 1236, 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008), *aff'd*, 583 F.3d 108 (2d Cir. 2009), for the proposition that the USAO is not obligated to produce documents that are not within its possession, custody, or control, *Rigas* is at odds with Supreme Court precedent requiring prosecutors to "learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555 (1995); *see also* Ogden Memo at § B.4 (suggesting that the prosecutor should review the files of regulatory agencies "such as the SEC" for discoverable information regardless of whether the agency is considered part of the prosecution team).

The coordination and collaboration between the USAO, FBI, CFTC, and SEC has been apparent in this action from the outset.[6] Principles of openness and fairness dictate that the Government be required to disclose all Rule 16, exculpatory, and impeachment material from these agencies, and Mr. Walsh respectfully requests that the Court order production of these materials.

### III. STEPHEN WALSH IS ENTITLED TO A BILL OF PARTICULARS

In its opposition, the Government argues that Mr. Walsh is not entitled to a bill of particulars because he seeks "information that is easily ascertainable by reference to the materials that the Receiver has made available to the defendants and the materials that the Government has provided to the defendants," and because the "15-page detailed indictment; all of the government's Rule 16 materials; the Receiver's detailed reports; and access to materials in the possession of the Receiver" purportedly make plain the allegations against him. (Opp. Br. 27, 30). Despite the Government's arguments however, a bill of particulars is warranted here to provide much-needed detail to the Indictment's bare-bones allegations.

First, the Indictment in this matter is far from "detailed." Indeed, as Mr. Walsh argued in his opening brief, the Indictment contains few details at all − the Indictment does not identify the alleged victim "investors," an alleged co-conspirator, and "other[] known and unknown" participants in the alleged fraudulent scheme.[7] (ECF No. 31, at ¶¶ 5, 8). Nor does the Indictment provide any details regarding the alleged "untrue statements," omissions, and other

---

[6] Apart from raising the Constitutional issues with the manner in which the USAO obtained unfettered access to documents and materials throughout its criminal investigation, Mr. Walsh does not challenge the authority of the USAO, CFTC, and SEC to conduct parallel and/or coordinated investigations. The Government's suggestions to the contrary (Opp. Br. 31, 33-36) are unavailing.

[7] In its opposition, the Government suggests that Deborah Duffy and other WG Trading employees are the alleged co-conspirators and participants in the alleged fraudulent scheme. (Opp. Br. 28). However, these identifications are far from straightforward, and Mr. Walsh is left yet again to guess the full nature of the Government's charges against him.

"devices, schemes, and artifices" allegedly used to "defraud" unidentified "clients and participants, and prospective clients and participants." (*Id.*, at ¶¶ 17, 19, 21). The Indictment also includes conclusions and open-ended allegations of purportedly fraudulent conduct as occurring "among other[]" allegedly illicit acts. (*Id.*, at ¶¶ 15, 21).

It is absurd to suggest that Mr. Walsh can "easily" fill in the missing details from the Indictment and prepare an adequate defense by reference to the Government's discovery materials. Indeed, the immense volume of materials at issue in the case makes this task virtually impossible. The more than 29,000 pages of discovery plus the data from twelve computer hard drives already provided by the Government will do little to illuminate the specifics of the alleged conduct the Government will seek to challenge at trial.[8] (*See* Colton Dec. at ¶¶ 12, 14; Declaration of Kimberly Kalmanson in Support of Defendant Stephen Walsh's Pre-Discovery Motions, dated June 25, 2010 ("Kalmanson Dec."), at ¶ 9). Likewise, although the Government suggests that Mr. Walsh can discover the nature of the charges against him by examining the Receiver's reports submitted in the parallel civil actions, (Opp. Br. at 29), these reports are also inadequate to apprise Mr. Walsh which of his specific alleged conduct over a thirteen-year period the Government plans to challenge.[9]

---

[8] Although the Government argues that these discovery materials allow Mr. Walsh to identify alleged investors, (Opp. Br. 28), this information is largely meaningless without some representation from the Government identifying *which* of these investors were allegedly affected by the alleged fraudulent conduct. *See, e.g.*, *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (requiring bill of particulars in RICO action to identify victims of extortionate schemes that the prosecution intended to prove at trial because "it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial"). Likewise, general bank and account records (Opp. Br., 28-29) do little to advise Mr. Walsh how the accounts are connected to any allegedly fraudulent activity.

[9] Notably, the Government's reliance on the Receiver's reports as a purported means of satisfying its criminal discovery obligations further demonstrates how inextricably intertwined the instant civil and criminal investigations and actions are.

Although the Government implies that providing Mr. Walsh access to the additional 650 boxes of documents, remaining six computer hard drives, and 21 computer towers in either the Government's or the Receiver's possession satisfies its obligation to provide the requested particulars, (*See* Colton Dec., ¶¶ 11, 14, 16; Opp. Br. 30), these documents and electronic data sources represent a substantial portion of the entire universe of materials the Receiver took from the defendants in the parallel civil enforcement actions − without any narrowing through a particularized search warrant or subpoena. The Government proposes that Mr. Walsh bear the burden of discovering the nature of the charges against him by examining every piece of paper and electronic file that was ever created, received, and/or stored by the civil defendants during the thirteen-year period charged in the Indictment. This, in turn, leaves the Government free to challenge any of Mr. Walsh's alleged conduct over that thirteen-year period and claim that he had sufficient notice of the challenged conduct.

The law does not support the Government's approach. Mr. Walsh is entitled to learn the particulars of the alleged conduct the Government will challenge at trial, and his requested bill of particulars is necessary to avoid surprise and allow him to prepare his defense. *See Davidoff*, 845 F.2d at 1154 (holding defendant entitled to bill of particulars specifying, *inter alia*, the identities of the victims of discrete schemes); *United States v. Nachamie*, 91 F. Supp. 2d 565, 576 (S.D.N.Y. 2000) (requiring bill of particulars to identify details of allegedly false Medicare claims that would be challenged at trial).[10]

---

[10] The Government's reliance on *United States v. Mandell*, __ F. Supp. 2d __, 09 Cr. 662 (PAC), 2010 WL 1780961 (S.D.N.Y. Apr. 30, 2010) is misplaced. In *Mandell*, Judge Crotty based his decision to deny the request for a bill of particulars in part on the fact that most of the Government's discovery came from files seized pursuant to a search warrant, noting that "[t]he Government has made discrete productions of approximately 32 boxes of material, and has confirmed that its evidence at trial will consist primarily of the materials in the 32 boxes." *Id.* at *15. Here, by contrast, the Government has not obtained the material in its possession pursuant to a search warrant and/or subpoenas, and has not made any limiting representation regarding the evidence it will seek to introduce at trial. Furthermore, Judge Crotty also

## CONCLUSION

For the foregoing reasons, Mr. Walsh respectfully requests that this Court grant his Pre-Discovery Motions and Order the requested relief.

Dated: New York, New York
September 13, 2010

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____/s/_____
Glenn C. Colton (GC-2493)
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: 212-398-5797
gcolton@sonnenschein.com

Mark A. Flessner (*admitted pro hac vice*)
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: 312-876-3136
mflessner@sonnenschein.com

*Attorneys for Defendant Stephen Walsh*

---

noted that "further information dealing with investors and investments will be provided at a date closer to trial." *Id.* Again, the Government has made no indication that it will provide further specific information regarding the identities of investors − or any of the charges in the Indictment − at any future date.