# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 05 Cr. 621 (RJS)

ALBERTO VILAR and GARY TANAKA,

Defendants.

------------------------------x

November 3, 2008
9:05 a.m.

Before:

HON. RICHARD J. SULLIVAN,

District Judge

APPEARANCES

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
BY: MARC LITT
JOSHUA KLEIN
BENJAMIN NAFTALIS
Assistant United States Attorneys

FAHRINGER & DUBNO, P.L.L.C.
Attorneys for Defendant Vilar
BY: HERALD PRICE FAHRINGER
ERICA DUBNO

WILSON, SONSINI, GOODRICH & ROSATI
Attorneys for Defendant Tanaka
BY: GLENN C. COLTON
JESSICA MARGOLIS

(In open court; jury not present)

THE COURT: Okay, please be seated.

All right, you just handed me a couple of Panamanian documents. Is this something new?

MR. NAFTALIS: The translation, your Honor, is new. The Spanish version was on your disk.

THE COURT: All right. And is there a dispute about the translation?

MS. DUBNO: Yes, there is, your Honor.

MR. COLTON: No, of course not, your Honor.

THE COURT: No. So what are you asking for?

MR. COLTON: Any statements, whether written or verbal, that she made that are about the subject matter about which she's going to testify, including statements she may have

made to U.S. Attorney's personnel, federal agents working on this criminal case or to SEC personnel, given that she worked for the SEC for a year or so before sort of changing agencies for the purpose of this matter. And the work that she did for the first year I believe I have a fair basis to infer until told otherwise, forms at least in part the work that supports her testimony that's upcoming in this trial.

So to the extent she e-mails about relevant facts; for example, the government produced to us an e-mail exchange between the AUSA's and Ms. Wraga about the GFRDA or alleged GFRDA clients that she was considering and not considering in various aspects. To me that's obviously properly produced in 3500. If a similar e-mail existed between herself and the SEC lawyers for the work that formed the start of the eventual product, that too, to me, should be produced.

MR. FAHRINGER: Your Honor?

THE COURT: Mr. Fahringer?

MR. FAHRINGER: May I add something to that, your Honor?

THE COURT: Certainly.

MR. FAHRINGER: It seems to me that what we ought to really go back to here is the primary impulse for the whole concept that started as under the Jencks decision, the Jencks Act and then 3500 was; that in the interest of justice and fairness, a person taking the witness stand and testifying who

has any reports, memos, notes or anything of that sort that relates to the testimony, defense counsel should have it for cross-examination. It's as fundamental as that. I'm not sure how much working together as a team has to do with it.

If a doctor came in here and began to testify, I think we would have a right to look at any notes that he might've had that he made during the course of his examination.

So that our view is, your Honor -- and this is of particular importance, any reports, any memoranda that she did in the process of finalizing these charts, I think in some ways may even be more important than e-mails back and forth, but certainly we should have any written material that were used or prepared by her in the process of producing a final product.

THE COURT: Well, I think there's two issues. One is the issue as to whether or not these materials are in the possession of the government. And the second issue is whether or not these materials are, in essence, beyond the scope of the testimony of the witness. They're separate inquiries, but I think they're related.

I think the short answer should be that they should be produced. I'll review them in-camera to make those determinations, if necessary. It may be that the response from the SEC is, we don't have anything that is responsive or meets the definitions of the documents requested. And if that's the case, we should know that.

But I guess I will order it produced to me at least for in-camera review. And if the SEC wants to articulate why this treads on their deliberative process or other arguments such as privilege, then they can articulate those things.

MR. KLEIN: Okay. I mean I think your Honor, the -- I think your Honor well articulated the two issues. The Government's resting on the first point that your Honor made, which is it's our position these are not within the possession, custody or control of the U.S Attorney's Office.

THE COURT: I understand that. But if the doctor or FBI Agent steadfastly avoided giving these things to the U.S. Attorney's Office, it doesn't mean that that thwarts 3500, right?

MR. KLEIN: I think that's right. And I think that the relationship between the U.S. Attorney's Office and the FBI is a little bit different in the sense that, you know, the FBI agents assist the U.S. Attorney's Office in working on a criminal investigation. And I think that it's -- generally we take the position that anything in the possession of the FBI is deemed to be in our vicarious possession.

With respect to the SEC, you know, the offices really do operate independently. And even when they cooperate on the investigations, there are all sorts implicating Rule 6C and otherwise, pursuant to which both offices take significant measures to ensure that they function and operate





independently.

So we perceive the relationship between the U.S. Attorney's Office and the SEC to be unique relative to the offices' relationship with other criminal law enforcement agencies. So that's really the basis on which, pursuant to which we haven't made an effort to obtain these materials.

THE COURT: Well I get that, but I don't think the 3500 says anything about -- it doesn't carve out an exception to the SEC. It says United States, right?

MR. KLEIN: Well, I think that's right. And I was pointing to the Judge Sand decision, which relies on the Judge Lynch decision, which your Honor correctly points out is a civil decision, for the proposition that in circumstances other than in which there is a joint investigation between the SEC and the U.S. Attorney's Office, they are deemed to be separate offices. And what's in the possession, custody and control of one is not deemed to be in the possession, custody and control of the other, absent the circumstances where there's proof that it was a joint investigation. And I would characterize the typical U.S. Attorney office FBI investigation would lead to join investigations, one in which both offices are operating in tandem to conduct a criminal investigation. This is a circumstance that I think is quite different. I think your Honor's absolutely correct, that the statute refers to the United States, but that was the reason for which we were citing





the Standard and the Judge Sand Rigas decisions.

THE COURT: All right. Well, I think the better course is to make the inquiry of the SEC. Either you can do it as the intermediary or I can do it. I suppose I can issue the order.

MR. KLEIN: Okay. I mean, we can make the request. As I said, we would have to make the request of the General Counsel's office, and we can then in the first instance.

THE COURT: You should do it pretty quick.

MR. KLEIN: We'll report back to the Court what they tell us.

THE COURT: All right. Well, let's -- it's now 2:05. Do you want to take a break and you can make convey that since tomorrow's Election Day, we'll have sometime tomorrow, but I don't know how voluminous these documents are, if there are any documents or how many layers of bureaucracy they need to pass this through.

MR. KLEIN: My understanding is that there are e-mails. I don't know whether or not they fall within the scope. I don't know how many layers of bureaucracy we need to go through, but we're attempting to make the request right now via e-mail, your Honor.

THE COURT: Okay. Really. Right there, Mr. Litt you're --

MR. LITT: Well, I'm searching for the address, but I

don't have it in this.

THE COURT: We can take a minute and do that if you want. I'll give you a break so you can make a phone call.

MR. LITT: If I can go downstairs I can do it.

THE COURT: Ms.Dubno, did you want to add something?

MS. DUBNO: Just one thing for the Court when you're considering, when you're doing your in-camera review. One of the things that we did receive in 3500 which, you know, wasn't much of her actual statements, was a declaration that she had made in the SEC proceeding back in 2005. And there she specifically goes at length into summary account analysis, detailed account transaction analysis. It's clear that at the time she was working with the SEC she was doing a detailed account analysis, which is exactly what the subject matter of her testimony is going to be in this case. And in that situation she was actually -- part of it was citing to the Fraterrigo affidavit which was in the criminal case, and so there's clearly an interrelatedness. So when you're considering those document, we would just refer you to those pages.

THE COURT: All right. Well, I assume the government will make the request, we'll hear the response and we may at least get a broad discussion of -- broad explanation as to what are the responsive documents, if any.

MR. KLEIN: Yes, we'll do that.

THE COURT: All right.

MR. KLEIN: If your Honor wants I can do that right now. And to the extent that we run a little bit late, it's Mr. Litt's witness on the stand so the Court can proceed.

THE COURT: All right, Mr. Fahringer?

MR. FAHRINGER: I was just going to add, your Honor,