```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                         09 CR 0722 (MGC)

STEPHEN WALSH,

                 Defendant.
------------------------------x
                                        New York, N.Y.
                                        February 5, 2014
                                        11:25 a.m.

Before:

             HON. MIRIAM GOLDMAN CEDARBAUM,

                                        District Judge

                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JOHN J. O'DONNELL
     Assistant United States Attorney

SHER TREMONTE
     Attorneys for Defendant
MICHAEL TREMONTE


ALSO PRESENT:

MICHAEL BRACONI - FBI SPECIAL AGENT
```

1           (Case called)

2           MR. O'DONNELL:  John O'Donnell, for the government.
3  With me is F.B.I. special Michael Braconi.

4           MR. TREMONTE:  Michael Tremonte, for Mr. Walsh.

5           THE COURT:  This case has limped along for a long
6  time.  First, I would like to be clear on what's the best
7  estimate of the length of the trial.

8           MR. O'DONNELL:  For the government, two to three
9  weeks.

10          THE COURT:  There is a big difference between two and
11 three weeks.

12          MR. O'DONNELL:  Probably closer to two, but I don't
13 want to underestimate and guess wrong.  I'm being conservative.

14          THE COURT:  Who wants it for July?

15          MR. O'DONNELL:  I would like it sooner.  Defense wants
16 July.

17          THE COURT:  That's what the speedy trial statute would
18 like also.

19          What is it that you would like at the moment?

20          MR. TREMONTE:  Your Honor, as of quite recently we now
21 have all the discovery in the case.

22          THE COURT:  Good.

23          MR. TREMONTE:  When it became clear, I believe, in
24 July that we would not be receiving the materials from Mr.
25 Flesner, the government, Mr. O'Donnell agreed to reproduce the

1 discovery.

2 THE COURT: I read about that, yes.

3 MR. TREMONTE: We received, as I detailed in the

4 letter, productions on a very regular basis from the

5 government. I believe there were between 8 and 12 separate

6 productions between July and that ended in November.

7 Just to be clear, the productions were almost all in

8 digital form, although in different digital forms. Sometimes

9 it would be a box of 50 CDs. Sometimes it would be two or

10 three or four DVDs, which contained a great deal more

11 information. Sometimes it would be on digital drives; hard

12 drives, they come in these small boxes.

13 THE COURT: In any event you got a lot of material.

14 MR. O'DONNELL: Yes.

15 MR. TREMONTE: And then we began the process in

16 November working with Smart Data, an outside vendor, because

17 the Kroell firm wouldn't allow us to move forward with them.

18 We contracted with a new vendor. I would say as of mid

19 December we have had the ability to begin reviewing that

20 discovery.

21 THE COURT: Have you not done it?

22 MR. TREMONTE: We have done some of that, your Honor.

23 We had a trial, as I detailed in the letter in December,

24 December going into early January. We are very hard at work,

25 as we have been since we were engaged in this case. First, we

were hard at work trying to get the discovery. Then we've been hard at work processing it.

THE COURT: You have a transcript of the hearing, the Monsanto hearing, which really reflects a large piece of the trial.

MR. TREMONTE: It does, your Honor, although, it doesn't give really any information in terms of what's most important to us, which is material we need to review to find impeachment material.

THE COURT: You can't expect the government to help you impeach their witnesses.

MR. TREMONTE: Exactly right, your Honor. That's why we feel it's extremely important for us to have adequate time to actually unearth the materials from this big chunk of data that we need.

THE COURT: You think this data is going to give you impeachment material?

MR. TREMONTE: We do, your Honor. I think for good reason. For example, our client, during almost the entire relevant period, was in a completely separate office. The two main cooperating witnesses who were in a different location had a separate set of e-mail communications, a separate set of documents that they kept. There is a great deal of evidence that we can only obtain from files that were in their exclusive possession, then the government's possession, which we have

just recently received. We do believe that we will fine ample impeachment material in those e-mail communications and documents, which we haven't seen before.

THE COURT: But you now have them. You have had them for a while.

MR. TREMONTE: We have had access to them for a few weeks at most. Most of that time we have been on trial.

THE COURT: But you undertook to represent this client in this case knowing whatever your other professional obligations were. That's not really a reason to postpone this trial.

MR. TREMONTE: Your Honor, we were put in something of a difficult spot because when we were asked about the scheduling of the other trials that we have, for example, in April, one in front of Judge Forrest and the other in front of Judge Crotty, we had to answer honestly that we did not know when this would go forward. Those were put down for April. That's now just two months away. We have two very substantial federal trials in April, and we would absolutely have rescheduled those, or adjourned them, or at least sought to if we had a better sense of when this would go forward. I apologize.

THE COURT: This is the clear this is the oldest of the three.

MR. TREMONTE: Yes, although we couldn't treat it that

1   was because, in the first place from our perspective, we only
2   had access to the relevant discovery as of mid-to-late December
3   of last year. We had these other trials that got scheduled.
4             THE COURT: We have to look forward.
5             When are those trials going to be held?
6             MR. TREMONTE: They both begin on April 7. One is
7   anticipated to be two to three weeks. I believe the other is
8   approximately the same.
9             THE COURT: My experience is two to three week trials
10  never take three weeks.
11            MR. TREMONTE: I hope that's right. They will be done
12  by the end of April, your Honor.
13            THE COURT: Right.
14            MR. TREMONTE: That's why we requested that we have
15  time after that that's adequate for us to complete our review
16  of the discovery, prepare our witnesses and move forward.
17            THE COURT: How many lawyers do you have in your firm?
18            MR. TREMONTE: We are five full-time lawyers.
19            THE COURT: You certainly are not going to be need
20  five full-time lawyers working on those two cases.
21            MR. TREMONTE: I wish we had more, your Honor.
22            THE COURT: We all wish we had more of everything.
23            MR. TREMONTE: Thankfully we have been fortunate, we
24  do have other cases in addition to those trials. We are really
25  firing on all cylinders around the clock to keep our docket

1     going.

2               THE COURT:  It's very rare in my experience that all

3     cases scheduled for trial, in fact, go to trial.

4               MR. TREMONTE:  These two, we are contrary confident

5     that they will.  They have been adjourned before.  Judge

6     Forrest and Judge Crotty have both made very clear that they

7     will not permit another adjournment.

8               THE COURT:  You are asking for essentially for three

9     full months of trial preparation time after those cases are

10    finished?  That's a very luxurious schedule for a trial lawyer.

11              MR. TREMONTE:  Actually, two, your Honor.  We

12    anticipate we would be done by the end of April.  That would

13    take us into May.  Then we wanted to have June and July to

14    prepare.  I don't think in the typical case we would ask for

15    that kind of time, but it's really hard to overemphasize just

16    how voluminous the materials here are.  We feel like we have

17    made a good start, but we do want to responsibly review them

18    and make sure that we have done everything that we can within

19    reason to be prepared.  We do think that will take about a

20    month.  Then we would need a month beyond that to prepare our

21    witnesses, our jury addresses or motions.

22              THE COURT:  You haven't prepared any witnesses up to

23    now?  That seems hardly likely.

24              MR. TREMONTE:  We really have been doing our best,

25    your Honor.

1          THE COURT:  I'm not criticizing your preparatory

2     efforts.  It's very rare to have, as you have in this case, a

3     trial rehearsal.  That is a rehearsal of the entire charge

4     against your client set out in print.

5          MR. TREMONTE:  Mr. O'Donnell has said this on a number

6     of occasions before.

7          THE COURT:  It's not from him that I'm basing that.

8     I'm basing that on what I heard myself in the courtroom.

9          MR. TREMONTE:  I understand, your Honor.  I think it's

10    fair to point out, as the Court well knows, the standard in the

11    Monsanto is hearing is quite a bit lower than it would be at

12    trial.  I don't think the government put forward even the bulk

13    of the evidence that they would present.  In particular, they

14    did not put on their main witnesses.  As I understand this

15    case, the evidence that purportedly, allegedly links my client

16    to the alleged wrongdoing is really all going to come out of

17    the mouth of these witnesses.  They did not testify.

18         THE COURT:  Most of what was testified to at the

19    trial, at the preliminary trial that I heard, was out of the

20    mouth of the principal witness against your client.

21         MR. O'DONNELL:  The other thing I would add is the

22    defense has now all the 3500 material for those witnesses who

23    was produced in advance of the Monsanto hearing and was given

24    to new counsel shortly after they appeared.

25         THE COURT:  You have a rare amount of other kinds of

1  important discovery.

2      MR. TREMONTE:  I think that's right, your Honor.  But
3  equally rare is the volume of the discovery, besides the 3500
4  and the very important task -- critical from our perspective --
5  of unearthing impeachment material is unusually difficult in
6  this case and unusually time consuming.  I never had a case,
7  working on either side of the business, that had this volume of
8  documents that needed to be reviewed to adequately prepare for
9  trial.  I have never seen anything like that.

10      THE COURT:  At some point you decided to accept
11  representation in a case in which whether you were going to be
12  paid remained to be seen; isn't that true?

13      MR. TREMONTE:  That is correct.

14      THE COURT:  You must have looked at something before
15  you made that decision.

16      MR. TREMONTE:  We did, your Honor.  We are not
17  complaining at all about the risk that we undertook.  In fact,
18  we are prepared to do as we would do whether we get paid or
19  not, everything that we are charged with doing to ensure that
20  our client has the best defense.  My point is in this case,
21  given the volume, that's an awful lot of work to do in a span
22  of four weeks.

23      THE COURT:  That may be, but also the time problems
24  were also quite foreseeable.  In any event, if I set this trial
25  for sometime in July, can we finish it?

1           MR. O'DONNELL:  Yes.  We prefer it to be much sooner.
2           THE COURT:  I understand.
3           MR. O'DONNELL:  One thing I would point out, counsel
4    has certainly been extremely diligent since they appeared.  We
5    don't have any quarrel with them.  Most of the material was
6    produced years ago.
7           THE COURT:  Long before, I agree.
8           MR. O'DONNELL:  To predecessor counsel.  We are really
9    prejudiced by the length of time it's taken to get the case to
10   a trial posture.
11          THE COURT:  Whether you are prejudiced, I'm not sure.
12   Delay is always prejudicial.
13          MR. O'DONNELL:  The witnesses have been hanging around
14   for a long time.
15          THE COURT:  One can never be sure what's going to
16   happen.  I don't see much point in haggling over the space of
17   one month, for example.  I could put it for June instead of
18   July.  I take it you are not really quarreling with them going
19   forward with their cases in April.
20          MR. O'DONNELL:  We were hoping for a trial date in
21   March.
22          THE COURT:  I was hoping for even earlier.
23          MR. O'DONNELL:  We were hoping for earlier, too.  My
24   mandate is to get the earliest possible trial date I could get.
25          THE COURT:  Of course.  That is my purpose, to get the

1  earliest fair trial date.

2  MR. TREMONTE: Your Honor, if I may, I very much
3  appreciate Mr. O'Donnell saying that we have been diligent.
4  I'm glad he appreciates that.

5  We have never asked for a delay. We tried everything
6  that we could possibly think of to compel predecessor counsel
7  to give us anything. They refused even to turn over the case
8  file. I agree they had the benefit of this discovery years
9  ago, but we couldn't even get summaries. I personally think
10  that's shameful, but it did happen.

11  In terms of prejudice, we really would like to have
12  the time. We think it's fair. We think it's appropriate. We
13  have never asked for a delay.

14  THE COURT: I'm going to schedule trial for July 8,
15  which is a Tuesday at 9:30 in the morning. Normally trial will
16  start at 10:00 in the morning, but the first day we start at
17  9:30 to resolve any outstanding housekeeping issues.

18  I hope it will take two rather than three weeks,
19  because I have been out a lot recently, I have an awful lot to
20  accomplish between now and then.

21  I will expect proposed charges by May 28. I use the
22  struck panel method of jury selection, which means if juror
23  number one is challenged, juror number two becomes juror number
24  one and so on. I will question the whole panel, and then I
25  will take objections in the robing room. I should add that the

1  Supreme Court has long ago held that if both sides challenge

2  the same juror, because objections are simultaneous, which is a

3  practice I follow, that both sides have gotten their objection

4  to the juror, their challenge.  No one has been deprived of

5  anything because you each got what you wanted.  That's what

6  lawyers don't like about simultaneous challenges.  But it's

7  actually an artificial notion that you're not getting what you

8  want.  You do.

9  How are we going to resolve any other problems

10  foreseen between now and then?

11  MR. O'DONNELL:  I don't know if the defense

12  anticipates any motions.  I expect there will probably be some

13  evidentiary applications that will present to Court in advance

14  of trial, that the Court can rule upon.

15  THE COURT:  What kind of evidentiary applications?

16  MR. O'DONNELL:  Motions in limine or highlighting

17  evidentiary issues that may arise during the trial.  Our plan

18  would be if there are any such things, we would know the Court

19  in advance of the trial.

20  THE COURT:  Of course you want to do that, but when it

21  comes to relevance, for example, I have to hear the evidence in

22  order to rule sensibly.  Not everything is a proper subject of

23  in limine motions before a trial.

24  MR. O'DONNELL:  Correct.

25  THE COURT:  I'm sure all of you are good enough

13
E25CWALC

1   lawyers to make applications you think you should do before
2   trial, before trial.
3              MR. O'DONNELL:  Yes.
4              MR. TREMONTE:  Yes, we will do that.
5              THE COURT:  We can presumably have a final pretrial
6   conference of some sort before actually going to trial.
7              MR. O'DONNELL:  That's a good idea.
8              THE COURT:  That we will do the week before.  June 26
9   at 10:00 a.m.
10             MR. O'DONNELL:  June 26 or 27, your Honor?
11             THE COURT:  June 26 at 10:00 in the morning, we will
12  have a final pretrial conference.  It will really will not be
13  final, because we will have a conference on proposed charges at
14  the end of the trial, but we will call it a final pretrial
15  conference at 10 o'clock on the 26th of June.
16             Is there anything further?
17             MR. O'DONNELL:  Just to exclude time under the Speedy
18  Trial Act.  We are very concerned about the number of days that
19  have already been lost on the clock.
20             THE COURT:  Very well.  I take it, Mr. Walsh, that you
21  agree that the time required for proper preparation of your
22  defense outweighs in the interest of justice between now and
23  June 26 for trial preparation?
24             THE DEFENDANT:  Yes, I do, your Honor.
25             THE COURT:  Very well, I will adopt that finding.  On

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    that basis I will exclude the time between now and July 8.
2    　　　　　MR. O'DONNELL:  Just so the record is clear, the time
3    will be excluded through July 8.
4    　　　　　THE COURT:  Through the opening of the trial.
5    　　　　　MR. O'DONNELL:  Thank you, your Honor.
6    　　　　　MR. TREMONTE:  Thank you, your Honor.
7    　　　　　THE COURT:  The time between now and July 8 will be
8    excluded based on the defendant's agreement that that time is
9    required for proper preparation of his defense.
10   　　　　　Are there any motions contemplated before trial?
11   　　　　　MR. O'DONNELL:  Not from the government, your Honor.
12   　　　　　MR. TREMONTE:  Not from the defense, your Honor.
13   　　　　　THE COURT:  Is there anything further?
14   　　　　　MR. O'DONNELL:  Not from the government, your Honor.
15   　　　　　MR. TREMONTE:  Not from the defense, your Honor.
16   　　　　　THE COURT:  Very well.  You are all excused.
17   　　　　　(Adjourned)