Eat0wals                    Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          09 CR 722

5   STEPHEN WALSH,

6                 Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         October 29, 2014
9                                        11:30 A.M.

10

11

    Before:
12
                      HON. MIRIAM GOLDMAN CEDARBAUM,
13
                                         District Judge
14

15                            APPEARANCES

16  PREET BHARARA
         United States Attorney for the
17       Southern District of New York
    BENJAMIN NAFTALIS
18  JESSICA MASELLA
    Assistant United States Attorneys
19
    SHER TREMONTE, LLP
20  BY:  MICHAEL TREMONTE
         JUSTIN SHER
21  Attorneys for Defendant

22

23  Present:  Special Agent Michael Braconi

24

25

1              (In open court; defendant present)

2              THE DEPUTY CLERK:  All rise.

3              THE COURT:  Good morning.  Please be seated.

4              All right, Mr. Walsh, have you read the presentence

5    report?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Are there any errors you would like to

8    draw to my attention.

9              THE DEFENDANT:  Nothing, your Honor.

10             THE COURT:  Very well.

11             Then I will hear anything you would like to tell me,

12   and anything your lawyer would like to tell me, in connection

13   with sentence.

14             MR. TREMONTE:  Good morning, your Honor.

15             THE COURT:  Good morning.

16             MR. TREMONTE:  Michael Tremonte, for Mr. Walsh.

17             Steven Walsh, seated beside me today, is a changed man

18   from the person who first appeared before this Court now almost

19   five years ago.

20             First, Mr. Walsh has accepted responsibility for his

21   crime.  He entered a guilty plea.  And he admitted,

22   specifically, that he signed the promissory notes which were

23   issued to, and carried on the books of WGTI, that the books of

24   WGTC were misstated as a result, and that that worked a deceit

25   on investors.

1          And in addition to pleading guilty to this case,

2  Mr. Walsh has also resolved the CFTC and SEC actions against

3  him.

4          Second, and very importantly on a personal note, Mr.

5  Walsh has successfully confronted his alcoholism.  Since

6  college, Mr. Walsh has had a decades-long dependence on

7  alcohol.  At his daughters urging in early 2013, post

8  indictment, Mr. Walsh joined Alcoholics Anonymous.  He has been

9  sober for nearly two years, and has devoted substantial time in

10  that period to helping others through AA, including through the

11  Rikers Alcoholics Anonymous ministry, as described in our

12  sentencing submission.

13          Now, these developments have changed Mr. Walsh's life

14  for the better.  Nevertheless, he profoundly regrets his

15  involvement in the securities fraud in this case.  And he

16  profoundly regrets that his career, which for many years was

17  exemplary, will end with his conviction.

18          From the time of his graduation from college and his

19  first job on Wall Street in the sixties, Mr. Walsh loved his

20  work.  He was good at it.  He was recognized for his talents.

21  And he spent decades improving his skills, building businesses,

22  and generating returns for investors.

23          In addition to those accomplishments, Mr. Walsh was,

24  and still is, a devoted father.  He doted on his sons and

25  daughter growing up, supported them with his care, his

Eat0wals                    Sentence

 1   attention when they were children.  Was a constant presence

 2   through adolescence, and now supports them as adults with

 3   careers and families of their own.

 4          As discussed in our submission, and in the more than

 5   60 supporting letters that were addressed to the Court, Mr.

 6   Walsh has also been a staunch supporter of a range of

 7   charitable causes.  His efforts on behalf of North Shore Long

 8   Island Jewish hospital, the US Lacrosse Foundation, and

 9   University of Buffalo, demonstrates a true sustained commitment

10   to important civic institutions that serve the public good.

11          And his role in the founding and growth of the Long

12   Island Alzheimer's Foundation is extraordinary.  That

13   organization, founded in 1988 after Mr. Walsh's then

14   father-in-law died of the disease, continues to improve the

15   lives of many, to this day.

16          These considerable accomplishments, and his work with

17   his family and for his community, demonstrate the true nature

18   of Mr. Walsh.  These accomplishments combined with his

19   acknowledgment of wrongdoing, and his acceptance of

20   responsibility, speak volumes about his true character.

21          And we submit the evidence of Mr. Walsh's strong

22   character, all of the good things that he has done for his

23   family, for his community, year in and year out, these things

24   should weigh strongly in favor of leniency.

25          These considerations also should weigh strongly

1    against the Draconian sentence sought by the government.  The

2    government, in its submission, seeks a sentence of 240 months,

3    which would ensure, for all practical purposes, that Mr. Walsh

4    ends his life in prison.  Such a sentence, your Honor, in our

5    view, or anything even remotely close, would plainly be

6    excessive.

7         THE COURT:  Over how many years did Mr. Walsh engage

8    in this scheme of stealing other people's money?

9         MR. TREMONTE:  Your Honor, Mr. Walsh allocuted to

10   securities fraud that took place during a period between 1996

11   and 2009.  And, specifically, the allocution and the principle

12   evidence in this case relates to these promissory notes.  And

13   these promissory notes were submitted at the urging of Mr.

14   Walsh's co-defendant, for the reasons that are spelled out in

15   the government's submission.  But, I submit, your Honor, that

16   the duration of the misconduct in this case needs to be kept in

17   perspective.  And I'll talk about that in just a little bit.

18        THE COURT:  You know, even though Mr. Walsh pleaded

19   guilty in this case, ultimately after years of avoiding it, it

20   was -- as a result of that, I heard all of the evidence before

21   the plea was entered in a Monsanto hearing.  So I am very

22   familiar with the facts of this case.

23        MR. TREMONTE:  Your Honor, if I may respond to that.

24   Two things:

25        First, I would urge the Court to keep in perspective

1    the amount of time that has passed.  I think, as your Honor

2    knows, my firm came into this case quite late in the day.

3            THE COURT:  Absolutely.

4            MR. TREMONTE:  After the Monsanto hearing.

5            THE COURT:  Absolutely.

6            MR. TREMONTE:  And we worked very, very hard to make

7    sure that we had all of the evidence which, as the Court may

8    remember, it was very difficult to get from predecessor

9    counsel.  But we eventually got it from the government.  We

10   made an effort to get through all of it, to understand the case

11   backwards --

12           THE COURT:  There was a transcript.

13           MR. TREMONTE:  Yes.  And we are very familiar with the

14   Monsanto hearing transcript.  And I think, fairly viewed, a lot

15   of that time that passed was not about Mr. Walsh, really, you

16   know, as a product of his own strategic decisionmaking

17   resisting resolution of the case but, really, legal wrangling

18   which protracted the proceedings over an extraordinarily long

19   period of time.  But I would urge the Court not to hold Mr.

20   Walsh ultimately responsible for, what strikes me looking at it

21   with the benefit of hindsight, is a good deal of legal

22   wrangling.  But the Monsanto transcript, I think, is really key

23   here.

24           At that hearing, the government presented the better

25   part of its case through FBI Special Agent Barnacle.  And I

Eat0wals                    Sentence

1    think a lot of that evidence, which we discussed at length in

2    our sentencing submission, is important to keeping this case in

3    perspective.  Because I think the government extrapolates, from

4    that evidence, at least in its most recent submission, in a way

5    that is not quite fair, right.

6            The evidence that came out at the sentencing hearing,

7    again as we discuss at length in our memo, shows that Mr. Walsh

8    had a very different, and ultimately limited, role than his

9    co-defendant, Mr. Greenwood.

10           During the entirety of the relevant period, Mr. Walsh

11   was in a completely separate -- not just a different office, he

12   was in a different state.  The testimony that was elicited from

13   Special Agent Barnacle --

14           THE COURT:  Are you suggesting that he was unaware of

15   the representations that were made to investors?

16           MR. TREMONTE:  No, your Honor, I'm not.  I'm not.  But

17   it is important that evidence was elicited which made it very,

18   very clear that during the relevant period, Mr. Walsh did not

19   make presentations to the investors.  In fact, had virtually no

20   interactions with investors, whatsoever.  Played no role in

21   masterminding the fraud.  Had no role in managing the books and

22   records of the business.  Didn't prepare statements.

23           THE COURT:  But he certainly had no trouble spending

24   the profits.

25           MR. TREMONTE:  And, again, I think the Monsanto

1    testimony was very important.  Because, ultimately, what the

2    sentencing process is about, under 3553(a), is drawing

3    distinctions, both large distinctions between this case and

4    other cases.  Also distinctions between the relative

5    culpability of defendants.  And then focusing, as courts have

6    discussed over and over again, on the particular nature and

7    characteristics of the individual defendant.

8            And I think the clear take-away from that Monsanto

9    hearing testimony is that if we, as we must, think about Mr.

10   Walsh in terms of relative culpability, okay --

11           THE COURT:  Why is that, why is not very culpable

12   enough, even if someone else is more?

13           MR. TREMONTE:  Very culpable is clearly enough for

14   some kind of sentence.  But in terms of fashioning the

15   appropriate sentence, it is important to make these fine

16   distinctions. The other important --

17           THE COURT:  That someone was worse, is not an excuse.

18           MR. TREMONTE:  It is not an excuse.  And in no way,

19   whatsoever, is it our intention to excuse Mr. Walsh's conduct

20   but, rather, to call to the attention of the Court the facts

21   and circumstances to distinguish him from his co-defendant, and

22   to distinguish this case from the most egregious and predatory

23   financial frauds, which it was not.  And we go into this in

24   great detail in our sentencing submission.  In particular, we

25   spent a fair amount of effort on the issue of the over

1    statement of culpability under the fraud guidelines in 2B1.1.

2    And we cited to --

3              THE COURT:  Well, lying is related to fraud, clearly.

4              MR. TREMONTE:  And, again --

5              THE COURT:  And using other people's money which one

6    acquires through misrepresentation is also fraud.

7              MR. TREMONTE:  And, your Honor, again, none of this is

8    to minimize the defendant's conduct.  It really is not.  But to

9    put that conduct in perspective, so that the sentence

10   ultimately reflects, appropriately, the nature of the offense.

11             And as we point out, and as even the Sentencing

12   Commission has emphasized, those fraud guidelines are a very

13   clumsy and irrational mechanism for establishing the length of

14   sentence.  And, really, the government here makes no meaningful

15   attempt to contest that in their submission.  In fact the

16   government makes no attempt to justify its request for a

17   guidelines sentence that is driven, really, a hundred percent

18   by that loss amount table, where other courts routinely, in

19   this district and elsewhere, routinely set that guideline aside

20   and impose much lower sentences.  Even in cases where

21   defendants acted with far greater culpability and with much

22   greater destructive consequences.

23             The other thing that is very clear from the Monsanto

24   hearing and, also, from the very robust record in the SEC

25   proceeding, is that 99 percent, or 98.9 percent of all of the

1    principle invested in this case either has already been, or

2    will be, returned to the investors.  And that makes this case

3    completely extraordinary.  By the time the receiver completes

4    his work, almost all of the $950 million that was invested over

5    the course of the period in the indictment will have gone back

6    to those financial institutions that made the investments in

7    the first place.  This is extremely unusual.  I have been doing

8    this for a while, both on this side and as a prosecutor.  And I

9    can say I have never been involved in a case like this.  I have

10   never been involved in a securities fraud case where 99 percent

11   of the investors' principle was returned.

12            That matters greatly.  It matters, because the

13   sentencing process is, as I said, is ultimately an exercise in

14   comparison in determining where one case falls in comparison to

15   others.  Is the defendant's wrongdoing extreme, did he cause

16   devastating harm.  And that's not what happened here.  In

17   contrast to the most egregious cases --

18            THE COURT:  Right, but what you are not -- you are not

19   telling me that Mr. Walsh was responsible for the return.

20            MR. TREMONTE:  The reason why that money is going back

21   to the investors is precisely because this defendant is not the

22   kind of defendant that you see in a Ponzi scheme or a

23   Pump-and-Dump scheme.  The degree of criminality here is not

24   even close.  And there is powerful evidence of that.  All that

25   money is coming back to investors, because it was actually

1  invested in real viable assets.

2          THE COURT:  For the benefit of the people whose money

3  it was not.

4          MR. TREMONTE:  Hundreds of millions of dollars at the

5  time that this case was taken down in 2009 was actually

6  invested precisely --

7          THE COURT:  I don't want to slow you up, go ahead.

8          MR. TREMONTE:  Where it not for the dollar amount at

9  issue, the case would definitely not have received this kind of

10  attention, and the government would not be seeking an obviously

11  disproportionate sentence.  That is an overarching point.  And

12  if the numbers were not so big, and the fraud guidelines didn't

13  pose such a distraction, it would be easier to focus on

14  3553(a)factors.  Sentencing supposed to --

15          THE COURT:  That's what I look to first.  In every

16  case in which I impose sentence, I look first to the factors

17  under the sentencing section of the statute.

18          MR. TREMONTE:  I'm sure that's right, Judge.

19          THE COURT:  I very rarely apply the guidelines.

20          MR. TREMONTE:  And that makes sense here, because

21  faithfully applying --

22          THE COURT:  But this is not such a case.

23          MR. TREMONTE:  Faithfully applying the 3553(a) factors

24  in this case, Mr. Walsh should not be sentenced as if he were

25  operating a Ponzi scheme.

Eat0wals                    Sentence

1          THE COURT:  Why is that?

2          MR. TREMONTE:  Because it was not a Ponzi scheme.  It

3   is a completely different level of criminality when the

4   defendant begins, from the very outset, to defraud victims.

5   And that is not what happened here.  That is not what the

6   evidence shows.

7          Mr. Walsh has been involved in legitimate businesses

8   since the late sixties.  And the evidence shows that even WGTI

9   and WGTC, the entities at issue here, were set up as legitimate

10  investments.  And you know that.  You know that because

11  hundreds of millions of dollars were actually in precisely the

12  investment vehicle that was advertised.  What really happened

13  here?  What really happened here is that narrow category of

14  cases where everything starts with the best of intentions and

15  as a completely legitimate exercise and, for whatever reason,

16  because the market cuts against the investments, because some

17  kind of expected return didn't materialize, mistakes are made

18  and those mistakes were repeated.  Again, not to minimize it.

19  It is a crime.  And Mr. Walsh has admitted to that.  But it's

20  not like a bucket shop.  It is not like a Ponzi scheme.  It was

21  not conceived in fraud.  And that does make it different.  And

22  that does mean that the guidelines that would otherwise be

23  applicable, to the absolute worst cases, right, should not be

24  applied mechanically here, that would necessarily produce an

25  unjust result.

1      THE COURT:  Nothing should ever be applied

2  mechanically.

3      MR. TREMONTE:  And I completely agree, your Honor, and

4  for the reasons we stated.

5      And so the nature of the business, the reason why

6  things went sideways, and also other factors that we have

7  discussed, such as the relevant culpability of Mr. Walsh, are

8  critically important here.

9      And we also urge the Court to take into account Mr.

10  Walsh's personal history and circumstances.  In particular, as

11  I said, his extraordinary dedication to his family, his friends

12  and his community.  The over 60 letters that were submitted by

13  people who know Mr. Walsh best, in some cases up to 50 years,

14  attest to the strength of his character and his deep concern

15  for others.

16      The letter from Michael Gann, who has known Mr. Walsh

17  for over 20 years, is typical, your Honor.  Mr. Gann describes

18  the tremendous support that Mr. Walsh provided to his father

19  who was suffering from cancer, and whose wife had just also

20  been diagnosed with cancer.  Mr. Gann writes all through the

21  ins and outs of the hospital with my mom, there was Steven,

22  stopping by the hospital, calling my dad, taking him out,

23  keeping him busy during a difficult time.  And Mr. Gann goes on

24  to say that Mr. Walsh, quote, "never left their side through

25  all of the pain.

1    Time and again, Mr. Walsh has been there for his

2 friends and family in times of need.  And, your Honor, you see

3 this in letter after letter, where supporters recount, in

4 detail, how Mr. Walsh has shown them many acts of kindness.  To

5 them.  To their families.  And to strangers.

6    Mr. Walsh has also been there for his community, as I

7 said, spending countless hours encouraging others to support

8 worthy causes.  I note in particular the letters concerning Mr.

9 Wales support for Long Island Alzheimer's Foundation, which

10 describe how his efforts really were not just about

11 fundraising, although he certainly encouraged many, many people

12 to provide lots of financial support, but they include speaking

13 in public about the need to support the foundation.  Visiting

14 with Alzheimer's patients, year in and year out.  And even

15 doing little things around the office, like cleaning up and

16 painting when the office needed maintenance.

17    And I would point, in particular, also, your Honor, to

18 the letters submitted by law enforcement officials on behalf of

19 Mr. Walsh.  Robert Hughes, Janice Collins, a probation officer.

20 And Mr. Balboni, who was a very high ranking law enforcement

21 official in New York State, it's the only time he has ever

22 submitted a letter on behalf of a defendant to be sentenced,

23 even though he has been asked to do so many, many times over

24 the years.

25    We urge the Court to take into consideration all of

this powerful evidence of Mr. Walsh's admirable qualities as

demonstrated in these letters, which argue in favor of

leniency.  Again, the government insists the lengthy sentence

is necessary to meet the goal of general deterrence.  We

disagree.  Research indicates that lengthy sentences have no

impact on general deterrence in this kind of case.  We cite in

particular to U.S. v. Adelson, a decision by Judge Rakoff 441

F.Supp.2nd 506, in which the judge discusses how there really

is no measurable effect on general deterrence of sentences of

any length in cases like this.  Ultimately, there is little, if

any, evidence that incarceration will effect general

deterrence.  Whereas, here, the defendant has no criminal

history, was engaged in lawful pursuits and real businesses for

the majority of his adult life, where his personal history and

characteristics demonstrate a powerful connection to his family

and dedication to his community, and where the fraud was

principally one of misrepresentation and not predatory, and

where there is zero chance of recidivism.

A lengthy sentence, your Honor, is not necessary, on

the particular facts of this case.  It's not necessary, given

the particular history and circumstances of Mr. Walsh.  On the

contrary, for all of the reasons discussed in our memo, a short

sentence will be adequate to meet the goals of sentencing under

3553(a).

Mr. Walsh would like to the address the Court, your

Eat0wals                    Sentence

1    Honor.

2              THE COURT:  Very well.

3              THE DEFENDANT:  Your Honor, I am deeply sorry and

4    apologize to the Court.  I totally accept my responsibility for

5    my role in what happened.  I want to apologize to our investors

6    who placed their trust in me, for the harm they experienced

7    because of my actions.  I truly loved working in finance and

8    investments, and I want to apologize to all of the people who

9    trained me and mentored me during my career.  And to every

10   single person that I trained and mentored who believed in, and

11   supported, and trusted me.  I want to apologize to them all.  I

12   have let each of them down and I'm truly sorry.

13             Lastly, I would like to apologize to my family and my

14   very good friends, particularly my three children, Michael,

15   Andrew, and Sarah, who are here.  Their support and

16   unconditional love have been amazing through this.  And I know

17   that I put them through a tremendous amount of pain.

18             I cannot thank them enough for their unconditional

19   support.

20             Thank you, your Honor.

21             THE COURT:  I assume the government has nothing to

22   add?

23             MR. NAFTALIS:  No, your Honor.  We rest on our papers.

24             THE COURT:  Okay.  I do intend to follow the

25   recommendations of the probation department in the case.

1    I heard the evidence in the Monsanto hearing.  And I

2  know that the proceeds of this scheme were used by both Mr.

3  Walsh and his co-defendant for personal extravagance and high

4  living, whatever their mental state, at the same time that they

5  were taking money from other people under false pretenses.

6    Indeed, many of the issues that were brought before me

7  had to do with extravagant expenditures, and whether the

8  property that was received for those expenditures could be made

9  available for Mr. Walsh's personal use to pay his lawyers.

10    Now, as I said, I do follow the recommendations of the

11  probation department.  And, at this time, I sentence you in

12  accordance with the guidelines, to 20 years in prison.  To be

13  followed by three years of supervised release.

14    I have received a consent order of forfeiture from the

15  government, which I have signed.  But I have not received

16  information on restitution.

17    MR. NAFTALIS:  Your Honor, the government in

18  consultation with the defense, will submit something following

19  sentence as to restitution.

20    THE COURT:  Very well.

21    In any event, Mr. Walsh, what happened here was that

22  many, many people had their money, in effect, stolen by

23  misrepresentation as to what they would receive in exchange for

24  their money.  And that money was used to line your pockets and

25  the pockets of your co-defendant.  And you certainly did not

Eat0wals                    Sentence

1   set aside some particular percentage of that profit for the

2   benefit of anyone else.  I mean some of it, I suppose, you gave

3   to charity as your lawyer has pointed out.  But you also spent

4   lavishly for yourself.  And used the proceeds of your

5   investments, which were not the investments promised to those

6   that you got to give you the money, for your own enrichment and

7   not for anybody else.

8           Accordingly --

9           I think you should get up.

10          -- at this time, I sentence you to 20 years in prison

11  to be followed by three years of supervised release.

12          I take it the probation department doesn't think that

13  you will have -- oh, I do have to impose a special assessment

14  under the law, as well.

15          MR. NAFTALIS:  Your Honor, the special assessment

16  would be $100.

17          THE COURT:  Very well.  There is a special assessment

18  of $100.

19          At the recommendation of the probation department, I

20  will not impose a fine because there has been an order of

21  forfeiture signed.  And there will be restitution.

22          I do hope that you will try to focus on never again

23  doing anything resembling this scheme that you were engaged in.

24  And you will take the time, while you are in prison, to think

25  about whether this is something you really can claim pride in

1   in any way, as your lawyer would like me to believe.  I hope

2   you do realize the gravity of what you have done, and that you

3   think about that during your time in prison.  And if you -- and

4   if you do, I wish you good luck.

5            THE DEFENDANT:  Thank you, your Honor.

6            THE COURT:  I don't think minimizing what happened

7   here is a particularly good way of looking at it.  Because lots

8   of people lost lots of money.  Some of it eventually may

9   trickle back to them, as was pointed out.  But that does not

10  justify using, for your own benefit and for many frivolous

11  things, the money that you stole from other people.  I hope you

12  really will focus on that when you have quiet time to think.

13  And if you are willing to really search your soul about what

14  happened here, I wish you good luck.

15           Very well.

16           Is there anything further?

17           MR. NAFTALIS:  Yes.

18           THE COURT:  You have the right to appeal.  And within

19  the next 10 days, you should tell your lawyer whether you want

20  to appeal my sentence.  Because he has to file a notice of

21  appeal in your behalf.

22           So that's something you should think seriously about,

23  and discuss with your lawyer.

24           Is there anything further?

25           MR. NAFTALIS:  Just a few items, your Honor.

Eat0wals                    Sentence

1          I think it is implicit in the Court's statements that

2    your Honor has considered the 3553(a)factors --

3              THE COURT:  Of course I have.

4              MR. NAFTALIS:  -- in fashioning its sentence.

5              THE COURT:  Of course I have.  Those are very

6    important factors in connection with every sentence I do.

7          And I do not always find that the guidelines sentence

8    adequately reflects what those factors provide, but in this

9    case, I am satisfied, after careful thought, that the

10   guidelines are an appropriate sentence.

11             MR. NAFTALIS:  And with respect to the advisory

12   guidelines range, just so I'm clear, the Court has adopted, in

13   its entirety, the PSR, including --

14             THE COURT:  That is correct.

15             MR. NAFTALIS:  -- the guidelines calculation at 42 --

16             THE COURT:  That is correct.

17             MR. NAFTALIS:  -- and criminal history category I; is

18   that correct?

19             THE COURT:  That is correct.

20             MR. NAFTALIS:  And lastly, your Honor, just with

21   respect to the PSR, I would just ask that your Honor ask

22   counsel if he has reviewed the PSR, and has discussed it with

23   his client.

24             THE COURT:  And whether he has any errors to bring to

25   my attention.  That's fair enough, yes.

Eat0wals                    Sentence

1          Is there any misstatement of fact in the guidelines --

2     in the presentence report?

3          MR. TREMONTE:  Your Honor, we submitted, to probation,

4     a detailed letter --

5          THE COURT:  Good.

6          MR. TREMONTE:  -- specifying the parts of the

7     presentence report that were factually inaccurate.  Those

8     included -- I believe they were all adopted by probation and --

9          THE COURT:  That is correct.  They filed a revised

10    report.

11         MR. TREMONTE:  Correct.

12         Including a description of the events in which Mr.

13    Walsh's role had diminished in the business, even prior to the

14    period covered in the indictment.

15         Your Honor, may I have one moment to confer with my

16    client?

17         THE COURT:  Yes, of course.

18         MR. TREMONTE:  Thank you.

19         THE COURT:  You may both be seated.

20         MR. TREMONTE:  Your Honor, may I be heard?

21         THE COURT:  Very well.

22         MR. TREMONTE:  I understand from your Honor's remarks

23    that it's the Court's understanding that the sentence in the

24    case is appealable.  Under the terms of the plea agreement --

25         THE COURT:  Oh, thank you.  I had forgotten.  Some of

1   our plea agreements do, and some don't waive the right of

2   appeal.

3           MR. TREMONTE:  I think it's totally clear, but not

4   crystal clear.  And to be on the safe side --

5           THE COURT:  Let's look at the plea agreement.

6           MR. TREMONTE:  I believe it is page 4 of the plea

7   agreement, your Honor, second full paragraph.

8           THE COURT:  Yes.  I should have remembered that the

9   government really tries very hard to get that provision.

10          MR. TREMONTE:  As it was --

11          THE COURT:  Perhaps you can read me the sentence you

12  are talking about.

13          MR. TREMONTE:  Yeah, your Honor.

14          I believe the relevant sentence is in the second full

15  paragraph, on page 4, as follows: The defendant acknowledges

16  that his entry of a guilty plea to the charged offense

17  authorizes the sentencing court to impose any sentence up to

18  and including the statutory maximum of 240 months imprisonment.

19          I'm sorry, the last sentence:  Moreover, it is

20  understood that the defendant will have no right to withdraw

21  his guilty plea, should the sentence imposed by the Court be

22  other than the stipulated guidelines sentence of 240 months.

23          And then, lower, the third full paragraph:  It's

24  agreed the defendant will not file a direct appeal, nor bring a

25  collateral challenge of any sentence equal to or below the

Eat0wals                    Sentence

1   stipulated guidelines sentence of 240 months.

2          I don't have the benefit of a Westlaw terminal at the

3   moment.  I'm not sure if 240 months, plus the supervised

4   release recommended by probation, is enough to get us over it.

5          To be on the safe side, we respectfully request that

6   the Court impose a sentence of 240 months and one day, so that

7   in the event the client decides to appeal, they can.

8          THE COURT:  Well, if you are asking me to set aside a

9   provision of the plea agreement.

10          MR. TREMONTE:  And I am not, your Honor.  I'm

11   asking --

12          THE COURT:  That is, your client had the right of

13   appeal before he agreed to this language, of which he did not

14   have to agree to.

15          MR. TREMONTE:  He did not, your Honor.  And certainly

16   it was.

17          THE COURT:  What do you mean, "he did not."

18          MR. TREMONTE:  No, that's right.

19          THE COURT:  He didn't discuss it with --

20          MR. TREMONTE:  No, I'm agreeing, your Honor.

21          THE COURT:  Yes.  And I think I explicitly asked him

22   if he discussed it with his lawyer.

23          MR. TREMONTE:  You did, your Honor.

24          THE COURT:  Because it is a major right.

25          MR. TREMONTE:  You did, your Honor.

1          And he answered in the affirmative.  And that's

2     correct.  I'm actually agreeing with the Court, I'm not

3     disagreeing.

4          However, it sounds as though the Court anticipated

5     that the defendant would have a right to appeal and, so, again,

6     we --

7          THE COURT:  That's not correct.  I did not.  I simply

8     forgot for a moment.  And at the time I took his plea, I made

9     it very clear to him that he was giving up that right.  And he

10    told me he understood and he had discussed it with his lawyer.

11         MR. TREMONTE:  Your Honor, there was a colloquy with

12    the magistrate, that's correct.

13         THE COURT:  Okay.  I told him -- oh, I'm sorry, it was

14    not my -- that's why I didn't remember.  I always do.  But I

15    didn't take that, this plea.  To my regret.  I do not often

16    permit the delegation of a plea.

17         MR. TREMONTE:  Your Honor, again we reiterate our --

18         THE COURT:  It is my regular practice.  And I hope the

19    magistrate judge did the same, to make clear what an important

20    right that is, the right of appeal.  And I have to assume that

21    if he discussed it with you, you made that clear, as well.

22         MR. TREMONTE:  Yes.  As the defendant allocuted before

23    the magistrate and, again, reiterated today, he did enter into

24    the plea voluntarily.

25         THE COURT:  And with an understanding of what he was

Eat0wals                    Sentence

1   giving up.

2           MR. TREMONTE:  He did, your Honor.

3           I am bound, however, by my duty of candor.  I don't

4   think anyone really expected that we would be at the outer

5   range of the hypothetical guidelines sentence.  And so, again,

6   I would respectfully request that the defendant at least have

7   an opportunity to appeal.  It's really just a matter of one

8   additional day to the sentence.

9           THE COURT:  But this was a negotiated plea.

10          MR. TREMONTE:  It was, your Honor.  There is no --

11  there is no denying that.

12          THE COURT:  If you --

13          MR. TREMONTE:  That is not what I'm tying to do.

14          THE COURT:  I understand that's not your purpose.

15          MR. TREMONTE:  It is not.

16          THE COURT:  But you have a partner here on this

17  agreement.  I cannot determine -- I cannot set aside a part of

18  the agreement for no reason.

19          MR. TREMONTE:  I understand that, your Honor.  But I

20  will reiterate.  And, again, nothing in our written submission

21  and nothing that I have said today is intended to minimize, or

22  in any way mischaracterize what happened here.  But I would

23  hazard that there is not another case, even remotely like it,

24  where a 20-year sentence has been imposed.  And for that

25  reason, I think in the spirit of the agreement, the single day

Eat0wals                    Sentence

1    doesn't make a difference, and at least allows us the

2    opportunity --

3              THE COURT:  Well, it makes the difference that you

4    want.  You want it to remove the waiver of the right of appeal.

5              MR. NAFTALIS:  Your Honor, may I have a moment with

6    counsel?

7              THE COURT:  It is a difference.  Why don't you come to

8    the bench -- or to each other.

9              (Pause)

10             THE COURT:  This was a negotiated plea.  It was long

11   and coming.

12             If your client wants to withdraw his plea, I will

13   consider that.  But I don't know what you are -- you are not

14   asking for that.  You are asking me to change an agreement.

15             MR. TREMONTE:  Your Honor, we thank the Court for your

16   patience in giving us an opportunity to confer with the

17   government.

18             What we propose, your Honor, is a brief adjournment so

19   that we may do some research to determine whether or not the

20   best course, and the appropriate course, is to withdraw the

21   plea.  The government has agreed to that adjournment, if the

22   Court will allow it.  And it can be very brief.  Just a matter

23   of days.  That would be sufficient for us to determine the best

24   course here, your Honor.

25             THE COURT:  I don't know why, 0I don't understand why

Eat0wals                    Sentence

1    it was not foreseeable, in view of that agreement, that you

2    would not be able to appeal.  That your client would not be

3    able to appeal.  It's a very common provision of these plea

4    agreements.  That doesn't mean I have a view as to whether you

5    should or shouldn't have agreed to it.  That's a different

6    matter.  But what you are now doing is trying to withdraw part

7    of the plea.

8            MR. TREMONTE:  Actually, at the moment, we're not

9    trying to do anything.  We simply want to ensure that we have

10   done adequate research to present the client with potential

11   options, and come back to the Court with a considered position.

12   And, again, the government has no objection to our doing so.

13           So, we strongly urge the Court to give us just a brief

14   adjournment to sort this out.

15           THE COURT:  Let me understand, what is the status of

16   your client at this moment, is he in custody or out of custody?

17           MR. NAFTALIS:  He is on bail, your Honor.

18           MR. TREMONTE:  He is out of custody, your Honor.

19           THE COURT:  So you're asking me to continue bail.

20           MR. TREMONTE:  I think there is no objection from the

21   government.

22           MR. NAFTALIS:  No objection to that, your Honor.

23           THE COURT:  Very well.

24           MR. TREMONTE:  Thank you, your Honor.

25           THE COURT:  Is there any reason why I shouldn't give

Eat0wals                    Sentence

1  you a deadline?

2          MR. TREMONTE:  No, your Honor.

3          THE COURT:  All right.  I will give you until next

4  Tuesday to do whatever you want to do.

5          MR. TREMONTE:  Thank you, your Honor.

6          THE COURT:  Very well.

7          MR. NAFTALIS:  Your Honor, is that -- just for

8  scheduling, is that for us to reappear on Tuesday, or for

9  papers to be submitted.

10          THE COURT:  Fair enough, fair enough.

11          You certainly have to make your position clear to

12  me --

13          MR. TREMONTE:  Yes, your Honor, we will.

14          THE COURT:  -- whether you are seeking to set aside

15  the agreement.

16          MR. TREMONTE:  Yes, your Honor.  We will do so in

17  advance of that date.

18          THE COURT:  Very well.

19          MR. TREMONTE:  Thank you, your Honor.

20          MR. NAFTALIS:  Thank you, your Honor.

21          (Adjourned)

22

23

24

25