```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            09-CR-722 (MGC)

PAUL GREENWOOD,

               Defendant.               Sentencing

------------------------------x
                                        New York, N.Y.
                                        December 3, 2014
                                        12:22 p.m.


Before:

               HON. MIRIAM GOLDMAN CEDARBAUM,

                                        District Judge


                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  BENJAMIN NAFTALIS, ESQ.
     JESSICA A. MASELLA, ESQ.
     Assistant United States Attorneys

HAFETZ & NECHELES LLP
     Attorneys for Defendant
BY:  FREDERICK P. HAFETZ, ESQ.
     NABILAH T. SIDDIQUEE, ESQ.

ALSO PRESENT:  KAI SCHULTZ, Paralegal, Hafetz & Necheles LLP
```

Ec31gres

1          (Case called)

2          THE COURT: Paul Greenwood?

3          I will hear anything you want to tell me about
4    sentence and I will hear anything your lawyer wants to tell me
5    about sentence. I have read all of the material that you've
6    given me.

7          First, let me ask you, have you read the revised
8    presentence report?

9          THE DEFENDANT: Yes, I have.

10         THE COURT: Is there any error in it that you would
11   like to bring to my attention?

12         MR. HAFETZ: Your Honor, if I may, there is not.

13         THE COURT: Very well. Then I will hear anything you
14   want to tell me and anything your lawyer wants to tell me in
15   connection with sentence.

16         MR. HAFETZ: Your Honor, if it's okay, I would like to
17   speak first and then Mr. Greenwood has a short statement.

18         THE COURT: Very well.

19         MR. HAFETZ: Thank you, your Honor, and good morning.

20         Your Honor, Mr. Greenwood has pled guilty to a very
21   serious fraud before this court. Very shortly after the guilty
22   plea, he entered into a cooperation agreement with the U.S.
23   Attorney's Office and has cooperated with them since that time
24   in 2009. The Second Circuit in the *Douglas* case, which we
25   mention in our memorandum, states that cooperation with the

1     government is significant in terms of expressing defendant's
2     remorse and also significant in terms of the benefit to society
3     that it provides to law enforcement.
4               Your Honor, Mr. Greenwood has, as your Honor knows and
5     has read, 82 letters that have been submitted on his behalf.
6     Quite frankly, it's more letters than I've ever had submitted
7     to a court for sentencing.
8               THE COURT:  But not more than I have had.
9               MR. HAFETZ:  Probably not, your Honor.  And the
10    letters are extremely important in terms of really telling the
11    story of Mr. Greenwood's life.  As Judge Rakoff has stated in
12    the *Adelson* case, "Surely if ever a man is to receive credit
13    for the good he has done and his immediate misconduct assessed
14    in the context of his overall life hitherto, it should be at
15    the moment of the sentencing when his future hangs in the
16    balance."  The letters indeed express Mr. Greenwood's good
17    deeds, your Honor, and when we say good deeds, I mean good
18    deeds are really the manifestation of really I believe core
19    values of Mr. Greenwood, which is that he is innately a person
20    who, throughout his life, prior to the fraud, during the fraud,
21    after the fraud, has really sought to help many people.  I
22    think he has an innate compassion to help others.  As his wife
23    Robin states -- she's here in the court today, and she states
24    in her letter to the court, "Paul is always the first person to
25    offer his time and support to almost anyone who needs his

1 help."

2 　　　　I would like to talk briefly about the letters, your
3 Honor, because I think they are so important in terms of
4 filling out the picture of the whole man who will be sentenced
5 by your Honor today.

6 　　　　Many of the letters, your Honor, talk about the good
7 deeds that Mr. Greenwood has done prior to the fraudulent
8 conduct. The fraudulent conduct began in the latter part of
9 the 1990s. Many of the letters talk about what Mr. Greenwood
10 did for people well before the fraud period. It wasn't because
11 he was enabled by the fraud to help people that he became a
12 good person who was interested in helping people, but I
13 believe --

14 　　　　THE COURT: Well, he certainly didn't help his
15 investors.

16 　　　　MR. HAFETZ: Excuse me?

17 　　　　THE COURT: He certainly did not help his investors.

18 　　　　MR. HAFETZ: He did not, your Honor, and he's
19 acknowledged that and he's pled guilty and takes full
20 responsibility for that, but in terms of filling out the
21 picture of the kind of person he is, which is what Section 3553
22 looks to in terms of getting a picture of the history and
23 characteristics of the individual, they show that really,
24 throughout his life, Mr. Greenwood has been someone who has
25 really looked to do exceptional things for people. The letters

1    from the persons who Mr. Greenwood put through college and paid
2    for their tuition -- I'm talking now prior to the fraud --
3    there's a letter of Alice Debany, a letter from George
4    Zabrecky, there's a letter from Seth Hostetter.  Some of these
5    people are present, amongst the many friends and family who are
6    in court today.  And Alice Debany, in her letter -- and again,
7    this is well before the fraud period -- talks about, "I met
8    Paul Greenwood in 1986 when I was 17."  She had some troubles
9    at the time.  She said.  "I somehow knew that Paul was the
10   right person to confide in.  He was fatherly in his concern and
11   he gave excellent advice as to how to go about getting out of
12   my situation.  He also had an open door to his stable to
13   provide me with a job as soon as I needed one.  He offered me a
14   life-changing proposal.  If I worked for him, he wanted me to
15   go to university and he would pay for all my tuition.  I went
16   to New York University for five years at night while working
17   full time for him.  He continued to be like a father to me.  He
18   read all of my papers.  He gave me all kinds of advice about
19   life and was supportive of every venture I took on."
20           The other letter writers in that period whose tuition
21   he paid for talk about the life-changing experience that he
22   gave to them and but for Mr. Greenwood, they would never have
23   had the opportunity.
24           The letter writers, prior to the fraud period, talk
25   about Mr. Greenwood extending himself to people who had medical

1   problems and serious health problems.  There's a letter from a
2   letter writer.  One of the letter writers, Charlie Weaver, was
3   suffering from a serious accident.  It was Mr. Greenwood at
4   that time who came to his aid, paid for his medical care, and
5   really got him back to the point where he was no longer
6   paralyzed with his aid.
7           There are people in the prefraud period who talk about
8   Mr. Greenwood giving them money, helping them out to start
9   their businesses.  Many of these people, by the way, your
10  Honor, are persons who Mr. Greenwood would look to help
11  throughout his life.  They were disadvantaged people, some
12  physically disadvantaged, some mentally disadvantaged, blue
13  collar people, people who had fallen on hard times, and really
14  it's a testament to his character and his nature that these are
15  people that he would look to help and did.  He would
16  unstintingly give his help to anyone who sought it and even
17  those who didn't seek it.
18          There's a letter from a woman who actually sits in the
19  court today with the wonderful name of Wondrous Jones, and she
20  writes -- again, this is all in the prefraud period -- she had
21  a disability of having polio as a young child and her lifelong
22  dream as she grew up was to be able to develop into a horseback
23  rider, an equestrian, notwithstanding her disability.  She
24  talks about how Mr. Greenwood came to her aid both financially
25  and also, because of just the generosity of his selfless

1     nature, enabled her to actually compete in the Paralympics as a

2     horseback rider, which were for disabled people.

3               The letters I think are very strong.  Here I'm really

4     just talking about the prefraud letters that really I think are

5     a testament to really the innate nature of Mr. Greenwood.

6     Notwithstanding that he is a criminal and has committed serious

7     fraud, in the full scale and dimension of the human being that

8     gets sentenced by the court, I believe that these are extremely

9     important.

10              The letter writers go on during the next decades to

11    talk about Mr. Greenwood continuing to help people and do many

12    good deeds.  Some of the letter writers talk about financial

13    assistance.  He enabled people to go to college continually

14    because of his financial assistance.  And some are not in the

15    nature of financial assistance.  They're just in the nature of

16    Paul Greenwood coming to help people.

17              There's a letter from an individual who had a serious

18    health condition.  Mr. Greenwood basically took over becoming

19    their advocate with the insurance company; someone who was

20    suffering, actually, from cancer.  Mr. Greenwood was able to

21    get them full treatment because of the time and concern that he

22    spent with them.

23              There are many letter writers, both before and after

24    the fraud period, who talk about Mr. Greenwood giving them

25    jobs.  There are people who had immigration problems.  Edgar

1  Bustamante talked about, in the prefraud period, how
2  Mr. Greenwood brought his family up from Venezuela to help hire
3  an immigration lawyer, help support him for a visa and,
4  actually, when they had no housing, when the family got here,
5  he provided housing for them.  This is in the prefraud period.
6  Later he went on to pay for college for the daughter Corina,
7  after they were settled here.
8       There's a letter from Rosemarie DeAngelis, a woman who
9  lived nearby the property that Mr. Greenwood lived on, who
10 writes about when she had a serious environmental issue in her
11 home, it was a toxic environment, she had to move out,
12 Mr. Greenwood offered immediately to have her and her family
13 come live with him in his house and ultimately gave her
14 housing, put her up somewhere else at her choice for a period
15 of time.  And again, he continued helping with those who had
16 immigration problems.  It wasn't just money.  It was a question
17 of time, it was a question of compassion for them, it was a
18 question of listening to them, and a question really of him
19 devoting himself out of compassion to the problems that people
20 had.
21      There are a number of letters, huge number, your
22 Honor, who I believe really are really a testament to I think
23 what are core and innate values of Paul Greenwood as a human
24 being who has looked throughout his life to help individuals I
25 think in an extremely significant and meaningful way and I

believe they are significant at this time, as *Adelson* said, at this time when the good deeds become part of the perspective as well as the wrongful conduct that the individual is going to be sentenced on, and it could be no other way, because that really is what the Judeo-Christian system is about. I mean, this is judgment day and we judge a man by all his deeds, wrongful and good, and on the good side of the ledger, they are extremely powerful for Mr. Greenwood.

Unfortunately, your Honor, part of the history and characteristics of Mr. Greenwood involve some family issues, and I believe that they are a proper factor with regard to the sentencing. He and his wife Robin have two adopted daughters, and since childhood the daughters, particularly the oldest one, now a teenager, have suffered some serious emotional and psychological problems, suffering throughout really much of her growing up period really uncontrollable rages, going into fits and destroying things, threatening to throw herself out of windows, and cars, and it's a sad situation. Throughout this Mr. Greenwood has been probably the most stabilizing influence in their life. As his wife Robin sadly writes in her letter to the court, a long jail sentence, the damaging effect of it, they fear, would really cause the daughter Karen, as she puts it, to slide back into a dark and awful place, to use her words. The younger daughter Laura, although not suffering as severely as Karen, has also suffered with her own emotional

1    problems.  Throughout it, Mr. Greenwood has been a mainstay and
2    a stabilizing influence in the road to gaining a place where
3    they would have mental health.
4         Your Honor, as the court knows, the government has
5    written a 5K1 cooperation letter in this case, and we, in our
6    own memorandum, also discuss Mr. Greenwood's cooperation.  I
7    believe it's fair to say that the cooperation with the
8    government was timely, prompt, came almost immediately after
9    the arrest, longstanding, it's continued for five years, it has
10   been truthful -- it's not one of these situations where a
11   cooperator wavered and was giving untruthful testimony.  The
12   government found him to be truthful I believe throughout.  And
13   it was substantial.  As the government describes it in their
14   letter, they state, "Without doubt, Greenwood provided
15   substantial assistance.  Had Walsh, the co-defendant, gone to
16   trial, Greenwood's testimony against him would have been
17   critical and devastating.  During each proffer session
18   Greenwood provided clear and credible evidence that was
19   thoroughly corroborated.  Based on those proffer sessions, the
20   government made the determination that Greenwood would present
21   powerful evidence at trial against his business partner, Walsh.
22   Greenwood would have been the only government witness at trial
23   who could have provided a detailed and comprehensive narrative
24   of the multiyear fraud and Walsh's critical and knowing role in
25   it.  Furthermore, Greenwood assisted the government

substantially in its preparation for the pretrial *Monsanto* hearing before this court." So though Greenwood did not testify, he helped prepare the government and the FBI agent for the hearing. But for Greenwood's cooperation and candor during these pretrial/prehearing preparation sessions, the government would not have been able to put on the thorough and convincing evidence it did before this court. Since February 2009, Greenwood aided the government and the receiver in investigating the finances of WG Trading and WG Investors and in marshaling the assets that had been and will be available for victims. In connection with the lengthy investigation by the receiver, Greenwood made available information to the receiver which to date has permitted the receiver to recover close to 90 percent of the investors' claims, or about $900 million.

The aid of Greenwood I believe was a substantial factor in obtaining and having the co-defendant in this case, Walsh, go to trial. So I believe his cooperation is extremely strong here and it is, I submit, your Honor, a highly significant factor. I note the recommendation in the presentence report by the probation office after they received the cooperation information regarding Mr. Greenwood of a five-year prison sentence. Also the cooperation, as noted in the government's letter and in the sentencing memo prepared by us, has also substantially assisted the receiver appointed by

1  the court with regard to the recovery of the assets, the
2  business and personal assets.
3        Finally, your Honor, I would note that Mr. Greenwood
4  has -- and I believe the caselaw recognizes this also as a
5  significant factor with regard to sentencing -- in postarrest,
6  in addition to cooperating with the government and the
7  receiver, he has done extensive volunteer work, since 2009
8  right up to the present time.  First, in New York, where he and
9  his family lived at the time, he spent substantial time using
10 his skills in tutoring programs for Veterans Hospital, and
11 later in North Carolina, where he moved with his wife in 2011
12 and lives at present, in tutoring programs there.  The tutoring
13 programs in the VA Hospital are for veterans, obviously, and
14 often they were people who had some mental disability.  The
15 tutoring also involved, besides the VA, homeless people,
16 disadvantaged people, disabled people, and Mr. Greenwood helped
17 them, many of them obtain GEDs, the equivalent of a high school
18 degree, so they could go on and get a further education or join
19 the workforce.  In North Carolina he has done the same thing
20 with tutoring there, and he has enabled people there, also
21 persons who had been disadvantaged, to be able to receive an
22 education that enabled them to go further for higher education
23 and for jobs.  His work with these people, your Honor, as the
24 letters note, was not just limited to the tutoring, as good a
25 thing as that was, where he completely devoted himself, but he

often found himself involving himself in their lives to the extent of driving them to doctor's appointments and being involved in terms of giving advice in their lives and really in a way that personally enabled them to advance and help themselves beyond just the tutoring, which was significant in their lives. The head of the tutoring program in North Carolina, Beth Daniels, writes that "Mr. Greenwood has repeatedly gone out of his way to assure that his students achieve their desired goals. As a direct result of his efforts, seven adults in the program now have immeasurably better lives than they did prior to staying under his tutelage. These adults, together with the staff members at the volunteer agency, are keenly aware of the positive impact Paul had within his community." The total hours that he has spent on the volunteer program since 2009 add up to approximately 3,000 hours just from the tutoring and the work, not counting the outside help he has given these people. That would be the equivalent of two full years of work in the last five that he has spent with the disadvantaged people. I submit that he has done this out of the belief that this is the right thing to do, it's a belief of the need for contrition, remorse, and understanding of the guilt, for the time that he has committed and his innate desire to help people, be there for them, and to better their lives.

Your Honor, considering the entire facts, the

1  seriousness of the crime, as your Honor has pointed out, and in
2  addition to the other factors that the sentencing statute says
3  must be taken into consideration, namely, the history and
4  characteristics of the individual, and weighing those all
5  together and taking into account the enormous good that
6  Mr. Greenwood has done throughout his life really because of
7  his innate desire to want to do those and to help people, your
8  Honor, I would respectfully request that the court sentence
9  Mr. Greenwood in accord with the recommendation made by the
10  pretrial services agency, office, of five years in prison.
11  Thank you, your Honor.
12            I think Mr. Greenwood would like to address the court
13  briefly.
14            THE COURT:  Very well.
15            THE DEFENDANT:  Thank you.  I'd like to apologize to
16  the court for my serious criminal conduct.  I stand before the
17  court today accepting full responsibility for my actions.  I've
18  lied, I've cheated, and I have stolen.  Words cannot express my
19  sorrow and remorse for what I've done.
20            Also, I would like to apologize to those of you who
21  put their trust in me, to those of you who considered me a
22  friend, and to those of you who loved me, especially my wife
23  Robin, our two daughters, my brother and sister, my relatives,
24  and my in-laws.  I am truly sorry for the grief and the
25  heartache that my actions have caused you.

1             Thank you.

2             THE COURT: Very well. I have read all of the
3    submissions, and I don't have to tell you, because you are an
4    intelligent man, how much damage you did do before you became
5    sorry about it. I have given you great credit for cooperation,
6    but that was also in part self-protective. It was not entirely
7    charitable. There are a number of people today who lost many
8    thousands of dollars as a result of your fraud, and you had no
9    difficulty for a long period of time living much better than
10   the people who invested their money through you in the hopes
11   that what you were telling them was accurate. And the loss of
12   that money was very devastating for many of them. I would like
13   to think that part of the reason you ultimately cooperated was
14   because you recognized that yourself.

15            But at this time I sentence you to ten years in
16   prison, which is on all of the counts taken together, really,
17   and some of them are shorter periods than others because of the
18   statutory provision. On Count One, the sentence is five years.
19   On Count Two, Four, and Five, ten years. On Three and Six, ten
20   years, to run concurrently with Counts Two, Four, and Five, and
21   concurrently with Count One.

22            I am required to also impose a period after you're
23   released from prison of three years of supervised release on
24   all counts, concurrently.

25            Restitution, I take it the government will submit the

1 amount to me.

2 MR. NAFTALIS: That's correct, your Honor.

3 THE COURT: Which I will include, because there's no
4 question that you should restore a lot of money to a lot of
5 people. And the restitution will be determined and included in
6 the final judgment.

7 There is also a special assessment of $100 per count,
8 which amounts to $600 in this case. I take it you are able to
9 pay that promptly, the $600.

10 THE DEFENDANT: Yes.

11 THE COURT: Very well. I hope, Mr. Greenwood, that
12 you really do feel the remorse and that you will be thinking
13 about all of this very carefully while you are serving prison
14 time, that you will come out of prison recognizing that you
15 really do not want to live this kind of life again and that you
16 do not want to do the kind of things that you have previously
17 done, largely because you really wanted to have a lot of money.
18 There's no other reason for the kind of fraud that you engaged
19 in, which cheated other people out of a lot of money. I hope
20 you will think about that carefully while you are in prison and
21 that you will really resolve to change your outlook on life and
22 on other people. And if you do spend your time in prison doing
23 that, I wish you good luck.

24 Is there anything further? I assume the government
25 has nothing to add.

  MR. NAFTALIS: Your Honor, I assume that your Honor, in fashioning the sentence, has granted the government's motion to sentence --

  THE COURT: I granted your 5K1. I not only granted it, I performed it.

  MR. NAFTALIS: And I think your Honor has already signed the consent order of forfeiture, but just if you could announce it, in addition to advising the defendant of his right of appeal and the conditions of supervised release.

  THE COURT: He did not waive his right of appeal in his plea?

  MR. NAFTALIS: No, your Honor.

  THE COURT: Until recently you required that in your pleas.

  MR. NAFTALIS: This is a cooperator sentencing, your Honor.

  THE COURT: Well, even cooperators have been required to waive their appeal rights.

  MR. NAFTALIS: In this agreement, your Honor, the defendant has not waived his right.

  THE COURT: Very well. All right. What I am being reminded, Mr. Greenwood, is that you have ten days in which to decide whether you want to appeal my sentence to the Court of Appeals, which you are entitled to do, and you should discuss with your lawyer whether you wish to do that. You should

1  discuss it with him promptly so that if you want to file an
2  appeal, he can do that for you within the time allotted.
3              MR. HAFETZ:  Your Honor, if I may, two things.  I
4  would ask if your Honor --
5              THE COURT:  I will give you the privilege of voluntary
6  surrender.
7              MR. HAFETZ:  Yes.  Can we make that in 60 days, your
8  Honor?  I don't think the government --
9              THE COURT:  It's longer than that.  It takes longer,
10 generally.
11             MR. HAFETZ:  Well, should they make the decision
12 sooner, I would ask that it be at least 60 days, your Honor, so
13 he can organize his affairs and --
14             THE COURT:  Very well.  What I will do is set a
15 deadline.  I will give you the privilege of surrendering to the
16 institution that the Bureau of Prisons assigns you to by
17 February 9, at 2:00 in the afternoon.
18             MR. HAFETZ:  Your Honor, I have one other request.
19 The request is, would your Honor recommend to the Bureau of
20 Prisons that Mr. Greenwood serve his sentence at the satellite
21 camp at FCI Butner, North Carolina.  His family lives in
22 North Carolina and --
23             THE COURT:  I will recommend that he be designated to
24 an institution close to where his family lives, which is what
25 you're asking.

1           MR. HAFETZ:  Well, there are different levels of
2     institutions.
3           THE COURT:  I do not choose the level.  That's
4     something the Bureau of Prisons does.
5           MR. HAFETZ:  I know the ultimate decision is with the
6     Bureau of Prisons, your Honor, but --
7           THE COURT:  I know that they try to place everybody
8     close to their families for many reasons, but I do not normally
9     choose the designation, or recommend a designation because I
10    don't know enough about the facilities.
11          What city in North Carolina are we talking about?
12          MR. HAFETZ:  It's in Butner, your Honor,
13    North Carolina, which I believe is not too far from where his
14    family lives.  He is eligible for the camp facility.
15          THE COURT:  I don't know anything about that.  The
16    Bureau of Prisons has established many policies about placement
17    of prisoners, and I do not know enough about the facilities
18    involved to choose among them.  I would have to do more
19    research to do that.
20          MR. HAFETZ:  I'm sorry, your Honor?
21          THE COURT:  I would have to do more research to decide
22    whether that is appropriate.
23          MR. NAFTALIS:  Your Honor, just in terms of the
24    housekeeping, if you could orally pronounce the forfeiture and
25    the terms of supervised release.

1          THE COURT:  Very well.  I have signed a preliminary
2     order of forfeiture, which is a consent order.  It sets out
3     forfeiture that has been agreed to.  And I believe you all have
4     copies of that document.
5          MR. NAFTALIS:  Yes, your Honor.  That's sufficient.
6     And if your Honor is going to just follow the PSR on the
7     standard and/or special conditions --
8          THE COURT:  I will follow the standard and the special
9     conditions.  I will include those, the special and standard
10    conditions for supervised release.
11         MR. NAFTALIS:  Thank you, your Honor.
12         THE COURT:  Very well.  Is there anything further?
13         MR. NAFTALIS:  Not from the government.
14         MR. HAFETZ:  No, your Honor.
15         THE COURT:  Very well.  Then you are all excused.
16                              o0o